RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

APR 20 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

Atlanta, Georgia

Deborah A. Saunders
2504 Mellville Ave -2205
Decatur, Georgia  30032

Case  **1:21-CV-1594**

Plaintiff propria persona

Against

Malachiah Saunders
190 Reserve Ave
Oberlin, Ohio 44030

Jury trial - None

**Enjoined**

Pension Benefit Guaranty Corporation |
PO Box 151750
Alexandria, VA 22315-1750

## COMPLAINT FOR JUDGMENT AS A MATTER OF LAW AND INJUNCTIVE RELIEF

This is an action at law and in equity brought under the ERISA
Act and The Retirement Equity Act of 1984 (REA).and

/

CHAPTER 18 - EMPLOYEE RETIREMENT INCOME SECURITY
PROGRAM SUBCHAPTER§1132. Civil enforcement and IRS

## JURISDICTION AND VENUE

This case is based on a violation of federal law. 28 U.S.C. § 1331.
This is called a "federal question" case. This court has subject matter
jurisdiction over this matter pursuant to 28 U.S.C. 1331, which
provides district courts with jurisdiction over civil actions arising under
the federal  laws of the United States.

2.  This claim involves damages in excess of $75,000.

3.  Diversity of citizenship can sometimes due to  one party to a
lawsuit is a citizen of a state and the opposing party is an immigrant/
alien (someone who is not a citizen of the United States) [28 U.S.C. §
1332(a)(2)]

4.  Venue is proper pursuant to 28 U.S.C. 1391(b) because the
events giving rise to the allegations in this complaint occurred in this
district and the alleged harm has occurred with this jurisdiction.

5.   Jurisdiction also exists under the Declaratory Judgment Act, 28
U.S.C. §§ 2201(a) and 2202.

## PRELIMINARY STATEMENT

ERISA provided that pension benefits may not be "assigned or
alienated."

ERISA is organized into four Titles:

1. Title I addresses definitions ; reporting and disclosure requirements ; minimum participation and vesting standards and the form of benefit payments ; minimum funding standards ; plan and trust requirements and related fiduciary responsibilities ; administration and enforcement, including claims procedures, enforcement, and remedies ; and group health plan and COBRA requirements.

2. Title II addresses amendments to the Internal Revenue Code.15
3. Title III addresses Department of Labor jurisdiction and administrative provisions
4. Title IV addresses plan termination insurance and the Pension Benefit Guaranty Corporation.

Under the federal ERISA/REA statutory scheme, **any judgment**, decree, or order dealing with alimony or support for a spouse, former spouse, child, or other dependent made according to local domestic relations law is considered a "domestic relations order" under federal law.

It becomes a Qualified Domestic Relations Order, or "QDRO," and must be recognized and enforced by an ERISA-qualified pension plan, when it creates or recognizes one of the listed classes of persons as an "Alternate Payee" with a right to receive all or any portion of the benefits normally payable to a participant in that plan. This was never done in divorce proceedings.

There is more to the statutory scheme then just the stream of payments while all parties remain alive. In an effort to protect spouses, Congress made survivorship benefits for **spouses mandatory** in defined benefit plans unless the spouse voluntarily waived such benefit.

Since retirement options usually need to be selected at the time of retirement, it is important to know during the divorce litigation whether the employee has already retired. If the worker has not yet retired, then all options should remain available.

Seek a nunc pro tunc order for equitable distribution of pension and retirement funds due spousal qualifications of ten or more years of marriage.

As a general rule, ERISA preempts any "state law" that "relates to" employee benefit plans. Further, ERISA contains the basic prohibition that a court may not order a plan to provide any benefit not explicitly permitted by its plan documents.

Further, by definition, a QDRO cannot award benefits that have been awarded to another alternate payee. In other words, benefits are paid to former spouses on a first-come, first- served basis, i.e., favoring the first-approved QDRO to be entered and served.

In cases where there is no cooperation, or one side refuses to participate, there is no barrier to achieving a fully enforceable QDRO *drafted and signed solely by the prevailing party.* If the underlying order calling for entry of the QDRO is sufficient the proposed QDRO should be submitted to the plan for "pre approval" before submission to the court for signature and filing clear as to terms, there does not even appear to be any need for a further hearing or other court proceeding; in such circumstances, several courts have expressed the willingness to sign off on the formal orders upon direct mailed submission.

In general, ERISA and the Code do not permit a participant to assign or alienate the participant's interest in a retirement plan to another person. These "anti-assignment and alienation" rules are intended to ensure that a participant's retirement benefits are actually available to provide financial support during the participant's retirement years. A limited exception to the anti-assignment and alienation rules is provided for assignments of retirement benefits through qualified domestic relations orders (QDROs).

# Introduction

<u>1.</u>     This defendant's conduct indisputably and clearly demonstrates that, *inter alia,* the defendant  did willfully alienate the rights of the ex-spouse of  the qualified

divorce retirement benefits by refusing to disclose to the pension plan administrator of a twenty year marriage while employee was active participant  in GM/Delphi defined pension plan.

2.   The Employee Retirement Income Security Act of 1974 (ERISA), as relevant here, obligates administrators to manage ERISA plans "in accordance with the documents and instruments governing" them, 29 U. S. C. §1104(a)(1)(D); requires covered pension benefit plans to "provide that benefits … may not be assigned or alienated," §1056(d)(1);

3.   The fundamental purpose and goals of ERISA-"to ensure that both spouses would receive sufficient funds to afford them security during their lifetimes, not to arrange for an opportunity for a predeceasing non-employee spouse to leave a part of her surviving husband's pension rights to others." (Id. at p. 1457.)

4.  A Qualified Domestic Relations Order (QDRO) is a type of domestic relations order (DRO) which creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan. This document was never placed in divorce proceedings.

5.   In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan

beneficiary, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse.


6.   " The Court noted that a plan administrator is obliged to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA, and the Act provides no exemption from this duty when it comes time to pay benefits.


## PARTIES

Plaintiff

Deborah Ann Saunders is the former-spouse  under the qualified domestic relations (QDRO) exception of being married for more than ten years, twenty years in fact (Exhibit A) and has rights of entitlement created by ERISA . As, ex-wife, a "former spouse" for purposes of dividing the 401(k) as "property" and by using a QDRO; which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan of GM/Delphi defined benefits.



Unwittingly  in 1970 Deborah Ann Saunders did  marry  Malachiah Saunders based on conditions for Permanent Residence for Malachiah Saunders, an immigrant and sponsored his welfare.  Deborah Saunders had two children from Malachiah. Ironically, she petitioned that his apprenticeship program in Great Britain be recognized as an engineering degree and got him a job at the GM Delphi Plant in Sandusky, Ohio in

1977.  Only to find out, years later, that in a scheme to defraud, the defendant's marriage was never reported or disclosed to the GM/Delphi Benefits office.

Deborah Saunders discovered her alternate payee's rights to entitlement of GM/Delphi defined benefits when applying for Medicaid in Georgia in 2019. The Medicaid representative suggested that she seek out her status regarding QDRO.  It was only then, she discovered the ongoing scheme by her ex-husband effort to alienate her from any retirement funds and benefits by failure to report or disclose the marriage.   No amount  of outreach moved him to settle this matter.  The Ohio domestic court declared that they lacked jurisdiction over ERISA federal law without a QDRO.

**Defendant**

Malachiah Saunders is a retiree, and at all times relevant to this Complaint was a participant in employee retirement plans defined for hourly employees at GM/DELPHI.  In 2007,  Malachiah Saunders became a retired participant under employee benefit plans administered by PBGC and governed by the Employee Retirement Income Security Act of 1974 (ERISA)receiving  predetermined monthly retirement benefit upon reaching a specific age without reporting or disclosing the ex-spouse status of entitlement to pension funds.

Defendant:  Applicable Plan
GENERAL MOTORS INCOME SECURITY PLAN FOR HOURLY-RATE EMPLOYEES is a **Defined Contribution Plan** which has an account specified for the individual employee where a defined amount is being

contributed to the plan by the individual, the employer or both. Examples of this type of plan are 401(k), 401(a), Employee Stock Ownership Plan (ESOP), Savings Plans and Profit Sharing Plans. To qualify for QDRO the parties must have been married for a minimum of ten years.

Defendant:  Enjoin Plan Administrator
29 U.S.C. § 1132 - U.S. Code Title 29. Labor § 1132 | FindLaw
codes.findlaw.com/us/title-29-labor/29-usc-sect...
 in the case of a multiemployer plan, by an employee representative, or any employer that has an obligation to contribute to the plan, (A) to enjoin any act or practice which violates subsection (k) of section 1021nt

Defendant:

Pension Benefit Guaranty Corporation |

The PBGC is the agency responsible for administering pension insurance pursuant to Title IV of ERISA. "Before ERISA, lack of oversight and legal standards often left pension plans without enough money, and employees who counted on those funds with nothing for retirement." *Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, **902 F.3d 597 , 601** (6th Cir. 2018) (internal citations omitted). In an effort to solve this problem, Congress established the PBGC to provide insurance for workers promised a defined pension benefit in the event that the sponsor terminated the retirement plan. *Nachman Corp. v. Pension Ben. Guar. Corp.*, **446 U.S. 359 , 375** , **100 S. Ct. 1723** , **64 L. Ed. 2d 354** (1980). The very purpose of the PBGC is to ensure that retirees receive their benefits notwithstanding their former employers' financial turmoil.

Because there was omission of information on file regarding ex-spouse, (Deborah Saunders) PBGC declared that under privacy laws would not

8.

provide any information regarding Malachiah Saunders benefit file. Although, a copy of the divorce papers were offered. PBGC refused.   Both the active and non-active file of the defendant did not declare such a marriage. Even when paying child support, the children were filed as illegitimate.

As a result, It is required that a freeze should be applied and continue on distribution  until PBGC administrators  have received the signed court order and the order is determined either to be a QDRO or not to be a QDRO.  However, several District Court provide a fairly technical – description of how QDROs interact with federally protected retirement plans and such  plans have been provided by actuary appraisers.   See attachment.

Therefore, when there is no cooperation, & one side refuses to participate, there is no barrier to achieving a fully enforceable QDRO drafted and signed solely by the prevailing party.

> "ERISA is a federal regulatory scheme that governs employee benefit plans; all benefit plans must conform with ERISA reporting, disclosure, and fiduciary requirements. Boggs v. Boggs, 520 U.S. 833, 841 (1997). Pension plans must also comply with participation, vesting, and funding requirements. Id. As a general matter, pension plans may not be assigned or alienated. 29 U.S.C. § 1056(d)(1). An exception to this general rule is made for QDROs. 29 U.S.C. § 1056(d)(3).d
>
> The Retirement Equity Act of 1984 (REA) amended ERISA to ensure pension income for surviving spouses. Boggs, 520 U.S. at 843. As specifically relevant to this case, the REA expanded ERISA protections by providing that "if a vested participant dies before the annuity start date, leaving a surviving spouse to whom he has been married for at least one year, a qualified preretirement survivor annuity

*shall be provided to the surviving spouse." Hamilton v. Washington
State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1091, 1095
(9th Cir. 2006); 29 U.S.C. § 1055(a)(2).*

*A qualified domestic relations order is defined, in part, as a domestic
relations order "which creates or recognizes the existence of an
alternate payee's right to, or assigns to an alternate payee the right to,
receive all or a portion of the benefits payable with respect to a
participant under the plan. . . ." 29 U.S.C. § 1056(d)(3)(B)(i)(I). A
domestic relations order is considered a QDRO only when certain
requirements are met under ERISA, 29 U.S.C. § 1056(d)(1)(C)-(D),*

*as will be discussed in greater detail below. I observe as a general
proposition that Linnea Garcia-Tatupu, as a former spouse of a
pension plan participant, may be treated as a surviving spouse of the
participant, and as such is treated as meeting all of the applicable
marriage requirements because she was married to a plan participant
for at least one year. 29 U.S.C. § 1056(d)(1)(F); 29 U.S.C. § 1055(f)"*

## Statement of Claim

I. The plaintiff was the ex-spouse to the defendant for twenty years and
entitled to a QDRO agreement to split pension funds after the divorce due
to 20 year participation in the employment Defined pension plan.

2. The plaintiff's federal rights were violated and harmed by *denial* of
thousands of dollars due as the entitled alternate payee pension plan
funds for the last 14 years.

3. Defendant did cause harm to plaintiffs by alienating pension funds by
fraudulently not reporting or disclosing the alternate payee's QDRO rights.

4. Plan funds were vested benefits, not settlement proceeds.

**Title 29 - LABOR**

## CHAPTER 18 - EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM

### SUBCHAPTER§1132. Civil enforcement

### (a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;(A) for the relief provided for in subsection (c) of this section.

## First Claim for Relief

PER

Employee Retirement Income    Security Act of 1974, known ERISA," codified  at 29USC § 1001 et seq.  of  ERISA    §206(d)(1),

Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth here at.

Defendants violated Plaintiffs' entitlement  rights to pension plans by failure to disclose benefits **provided** under a Employee plan may not be assigned or **alienated**;  to ensure that the employee's accrued benefits are actually available for retirement purposes.

## Second Claim for Relief

Per

**§ 1.401(a)-13 Assignment or alienation of benefits.**
*No assignment or alienation* **-(ii) Any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.**

Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth here at.

Defendants violated Plaintiffs' right by willful omission of the ex-spouse status to prevent any interests or plan benefits entitled to. The defendant willfully did not report or disclose the ex-spousal status to Plan Administrator and not addressing distribution of such funds in the divorce proceedings.

## Third  Claim for Relief

Sections 501 and 502 authorize, respectively, criminal and civil enforcement of the Act. While the former section provides for criminal penalties against any person who willfully *violates any of the reporting and disclosure* requirements of the Act,

] Section 501 reads as follows: "Any person who willfully violates any portion of part 1 of this subtitle, or any regulation or order issued under any such provision, shall upon conviction be fined not more than $5,000 or imprisoned not more than one year, or both; except that in the case of  such violation by a person not an individual, the fine

imposed upon such person shall be a fine not exceeding $100,000." 88 Stat. 891, 29 U.S.C. 1131.

Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth here at.

Defendants willfully violated the reporting and disclosure requirements of ERISA's rights given alternate payees under the law and fraudulently secured funds for himself.

## FOURTH Claim for Relief

To recover the [473 U.S. 134, 147] benefits due her, the plaintiff has filed an action pursuant to 502(a)(1)(B) to recover accrued benefits, t**o obtain a declaratory judgment that she is entitled to benefits** under the provisions of the QDRO plan as ordered, and to enjoin the plan administrator from improperly refusing to pay benefits in the future.

* Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth here at.

After such notification, the Plan must affect a participant's account, the Administrator must place a hold on the participant's account, which will prevent loan issuances, in- service withdrawals or distribution of benefits.

Whenever a court order allocates a specific portion of a participant's benefits to an alternate payee, a second order between the parties might change the amount to the alternate payee. Moreover, a court order will not fail to be a QDRO solely because of the time at which it is issued. Therefore, as Plan Administrator, should not reject an order because it is issued after the participant's death, after the parties' divorce or after the participant has commenced receipt of his benefit.

## FIFTH Claim for Relief

*Section 502(a)(3) claim. It ruled that the phrase "equitable relief" rarely includes relief in the form of a monetary award and only when the money has been unjustly possessed by the defendant.*

- Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth here at.

Defendant  did by fraud of omission of ex-spouse status unjustly possess the alternate payee share of pension and benefit funds for some twenty years.

**Georgia** is an **equitable distribution** state, meaning the courts recognize that both spouses have an **equitable** interest in all marital property acquired during the course of the marriage which aligns  with ERISA law.

## PRAYER FOR RELIEF WHEREFORE,

Plaintiffs pray for relief as follows: A. That this Court issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in concert or participation with them, from enforcing a freeze on all accounts until released by court order.

Distribution of funds shall be paid per the QDRO (attached) as prepared by the prevailing party.  Upon the death of the participant the remaining distributions are paid to the estate of the ex-spouse to maintain any estate plans in place and protect the heirs.

 For compensatory damages in excess of $235,200;. For punitive damages; For costs, interest and attorney's fees; and, For any other relief that this court deems just and appropriate.

## This is lawful action for damages and/or statutory fines, judgment as a matter of law and injunctive relief.

_____

*Deborah A. Saunders*
*2504 Mellville Ave -2205*
*Decatur, GA 30032*


*Exhibits:  Divorce Documents*
*Copy of Typical Annual Pension Distribution*

15.

**IN THE DISTRICT COURT OF NORTHERN GEORGIA
ATLANTA DIVISION**

**DEBORAH A. SAUNDERS**
_____/

**Plaintiff**

  **vs.**                                            **CASE NO. CV-2021**

**MALACHIAH SAUNDERS, PENSION
BENEFIT GUARANTY CORPORATION
(ENJOINED)**
_____/

**Defendant, Third-Party Defendant**

**<u>CERTIFICATE OF SERVICE</u>**

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the foregoing has

been furnished by Commercial Carrier on April 9, 2021 to the following:

- Malachiah Saunders, 190 Reserve Ave, Oberlin, Ohio 44030

16.

- Pension Benefit Guaranty Corporation (ENJOINED), 1200 K Street NW Suite 10227, Washington DC, District of Columbia 20005

DEBORAH A. SAUNDERS
2504 Mellville Ave
Decatur, Georgia 30032
businessboxinc@aol.com
(770) 912-1108

17

In the UnitedStates District Court, Northern Division, Atlanta, GA
Case No._____

## APPENDIX

1) QDRO

2) MARRIAGE/DIVORCE RECORDS

3) REFERENCE CASES

4) DEFINITION

5) NOTICE OF EQUITABLE DISTRIBUTION

Deborah A Alex-Saunders
2504 Melville Ave Apt 2205
Decatur, GA 30032
770-912-1108
Pro Se

## In The United States District Court Of Northern Georgia
## Atlanta Division

In the Matter of:
Deborah Ann Alex-Saunders                          Case: _____
     Plaintiff,

                             Re: 89-DR-128

     Vs.

Malachiah Saunders,                                JUDGE:_____
     Defendant,

### QUALIFIED DOMESTIC RELATIONS ORDER

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.  **Effect of This Order as a Qualified Domestic Relations Order:** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under a multi-employer sponsored defined benefit pension plan that is qualified under Section 401 of the Internal Revenue Code (the "Code") and the Employee Retirement Income Security Act of 1974 ("ERISA"). It is intended to constitute a Qualified Domestic Relations Order ("QDRO") under Section 414 (p) of the Code, Section 206(d)(3) of ERISA and the Retirement Equity Act of 1984, P.L. 98-397.

2.  **Parties:** The parties hereto were married, and a divorce action is in this Court at the above number, and this Court has personal jurisdiction over the parties. The parties were married on June 20, 1970 and divorced on July 2, 1990.

3.  **Participant Information:** The name, last known address, social security number, and date of birth of the plan "Participant" are:

       Name: Malachiah Saunders ("Participant")
       Address: 190 Reserve Ave, Oberlin, Ohio 44074

10. **Treatment of Alternate Payee As Surviving Spouse for Purposes of a Qualified Joint and Survivor Annuity As Such Term Is Defined in Section 417 of the Code:** [This Section applies only if the Participant had elected a survivor annuity at the time of retirement.] In the event that the Participant predeceases the Alternate Payee, such Alternate Payee shall be designated as the surviving spouse of the Participant for purposes of establishing Alternate Payee's entitlement to receipt of this monthly post-retirement survivor annuity, in accordance with the election made by the Participant on the date of Participant's retirement. For purposes of determining the eligibility for such surviving spouse benefits, the Alternate Payee and the Participant have satisfied the one (1) year marriage requirement as enumerated in Section 401(a)(11) and 417(d) of the Code and as may be required under the provisions of the Plan.

11. **Death of Alternate Payee:** If the Alternate Payee predeceases the Participant, the Alternate Payee's assigned share of the benefits, as stipulated herein, shall revert to the Participant; but only to the extent permitted under the terms of the plan.

12. **Savings Clause:** This Order is not intended, and shall not be construed in such a manner as to require the Plan:

　　　(a)　to provide any type or form of benefit option not otherwise provided under the terms of the Plan;

　　　(b)　to require the Plan to provide increased benefits determined on the basis of actuarial value;

　　　(c)　to require the payment of any benefits to the Alternate Payee that are required to be paid to another alternate payee under another order that was previously deemed to be a QDRO;

　　　(d)　to make any payment or take any action which is inconsistent with any federal or state law, rule, regulation or applicable judicial decision; or

　　　(e)　to change the benefit form or the beneficiary of a joint life annuity if the Participant is already receiving a benefit.

13. **Certification of Necessary Information:** All payments made pursuant to this Order shall be conditioned on the certification by the Alternate Payee and the Participant to the Plan Administrator of such information as the Plan Administrator may reasonably require from such parties to make the necessary calculation of the benefit amounts contained herein.

14. **Continued Qualified Status of Order:** It is the intention of the parties that this QDRO continue to qualify as a QDRO under Section 414(p) of the Internal Revenue Code, as it may be amended from time to time, and that the Plan Administrator shall reserve the right to reconfirm the qualified status of the Order at the time benefits become payable hereunder.

15. **Tax Treatment of Distributions Made Under This Order:** For purposes of Sections 402(e)(1) and 72 of the Internal Revenue Code, any Alternate Payee who is the spouse or former spouse of the Participant shall be treated as the distributee of any distribution or payments made to the Alternate Payee under the terms of this Order, and as such, will be required to pay the appropriate federal income taxes on such distribution.

16. **Inadvertent Payment(s):** In the event that the Plan Trustee inadvertently pays to the Participant any benefits that are assigned to the Alternate Payee pursuant to the terms of this Order, the Participant shall immediately return such payments to the Plan Administrator. The Participant shall hold such inadvertent payments in "constructive trust" on behalf of the Alternate Payee until such time as the payments are returned to the Plan Administrator. Upon receipt of the repayment, the Plan Administrator shall issue an amended Form 1099 to the Participant, as applicable, so that the Participant is not liable for any income taxes associated with the Alternate Payee's assigned share of the benefits. Not withstanding the above, rather than requiring the Participant to return the inadvertent payments, the Plan Administrator may, in their sole discretion, recoup such payments on a prospective basis by reducing the Participant's monthly pension benefits on a temporary basis until a full recovery is made.

   Similarly, in the event that the Plan Trustee inadvertently pays to the Alternate Payee any benefits that should have remained the property of the Participant after the implementation of the terms of this QDRO, the Alternate Payee shall immediately return such payment to the Plan Administrator. The Alternate Payee shall hold such inadvertent payments in "constructive trust" on behalf of the Participant until such time as the payments are returned to the Plan Administrator. Upon receipt of the repayment, the Plan Administrator shall issue an amended Form1099 to the Alternate Payee, as applicable, so that the Alternate Payee is not liable for any income taxes associated with the Participant's benefits that were not assigned to the Alternate Payee hereunder. Not withstanding the above, rather than requiring the Alternate Payee to return the inadvertent payments, the Plan Administrator may, in their sole discretion, recoup such payments on a prospective basis by reducing the Alternate Payee's monthly pension benefits on a temporary basis until a full recovery is made.

17. **Continued Jurisdiction:** The court shall retain jurisdiction to establish and/or maintain the qualified status of this Order as a QDRO, and to effectuate the original intent of the parties as stipulated herein. The court shall also retain jurisdiction to enter such further orders that are just, equitable and necessary to enforce, secure and sustain the benefits awarded to the Alternate Payee, in the event that the Participant and/or the Plan Administrator fail to comply with any or all of the provisions contained herein. Such further orders may also include, but not be limited to, nunc pro tunc orders or orders that "recharacterize" the benefits awarded under this Plan to apply to benefits earned by the Participant under another plan or orders that award spousal or child support, as applicable, to the extent necessary to carry out the intentions and provisions of this Order.

   In the event that the Plan Administrator determines that an overpayment has been made to the Participant and/or Alternate Payee for any reason, including but not limited to, the Participant's retroactive eligibility for Social Security disability payments or the miscalculation of the Participant's accrued pension benefits, and the parties cannot come to an agreement regarding

their respective liability toward the Plan's recoupment of such overpayments, the Court shall reserve jurisdiction regarding the allocation of such repayments to the Plan between the Participant and Alternate Payee. The Court shall also retain jurisdiction in the event the Participant retires under the "disability" provisions of the Plan and receives a disability pension greater in actuarial value than the regular accrued benefit (i.e., the pension includes an enhanced "disability component"), whether resulting from an earlier commencement date than is traditionally offered for early retirees, or a more favorable reduction rate than that which is otherwise imposed on early retirees in general. Such reservation of jurisdiction in this event may be necessary to determine how much of, when, and to what extent, such disability benefits are to be payable to the Alternate Payee if the Plan Administrator interprets the QDRO in a manner that was not intended by the parties or the court.

The Court's reservation of jurisdiction shall be liberally construed to effect the provisions of this Order and to resolve any disputes that may arise among the parties and/or between the parties and the Plan Administrator of the Plan concerning benefit payments or any other aspect of this Order. Should any portion of this QDRO be rendered invalid, illegal, unconstitutional, or otherwise incapable of enforcement, or should any of the procedural matters herein ordered need to be adjusted to accomplish the objectives of this QDRO, the court shall reserve jurisdiction to make such adjustments as necessary in order to effectuate the intent of the parties and the court as manifested herein, including but not limited to, adjustments regarding the division of the community and non-community portions of the participant's benefits, if applicable. Further, the Court also retains jurisdiction to effectuate the commencement of monthly annuity or lump sum payments to the Alternate Payee, including but not limited to, compelling the Participant to sign and/or execute any necessary retirement election forms in the event the Participant refrains from doing so in an apparent attempt to delay or postpone the commencement of the Alternate Payee's assigned share of benefits.

18. **Effect of Plan Termination:** In the event that the Plan is terminated, whether on a voluntary or involuntary basis, and the Participant's benefits become guaranteed by the Pension Benefit Guaranty Corporation ("PBGC"), the Alternate Payee's benefits, as stipulated herein, shall also be guaranteed to the same extent in accordance with the Plan's termination rules and in the same ratio as the Participant's benefits are guaranteed by the PBGC.

19. **IRC Section 415 Limitations:** Notwithstanding the provisions of this Order to the contrary, it is understood that Internal Revenue Code Section 415 and applicable provisions of the Plan impose maximum benefit payment limitations which may not be exceeded, and testing for such limitations requires aggregation of the Participant's benefit with those assigned to the Alternate Payee herein. In the event the aggregated benefits payable under the Plan to both the Participant and the Alternate Payee would exceed such Section 415 limitations, the Participant and Alternate Payee shall share on a "pro-rata" basis, any benefit reduction imposed by the Plan in order to comply with Section 415. Any such "pro-rata" reductions shall be determined at the time benefit payments commence to the Participant or Alternate Payee, as applicable.

Further, as the Section 415 limits increase from time to time, the plan administrator may increase the amounts payable to affected participants under this qualified Plan. In this case, the

Participant's and Alternate Payee's respective share of the benefits shall increase in a proportionate manner.

20. **Return to Work:** In the event the Participant returns to work after retirement and incurs a total or partial suspension of monthly pension annuity benefits, it is the intent of the Court that the Alternate Payee's assigned share of the benefits as set forth under Section 8 shall continue unaffected by such suspension of benefits, but only to the extent permitted under the terms of the Plan. If the plan administrator does suspend any portion of the Alternate Payee's assigned share of the benefits, they shall be reinstated (to the extent allowed by the Plan) upon the Participant's subsequent retirement. This includes the reinstatement of any early retirement subsidies and/or supplements that again become payable to the Participant.

21. **Actions By Participant and/or Participant's Heirs or Assigns:** The Participant and/or Participant's heirs or assigns shall not take any actions, affirmative or otherwise, that can circumvent the terms and provisions of this Qualified Domestic Relations Order, or that could diminish or extinguish the rights and entitlements of the Alternate Payee as set forth herein. Should the Participant and/or Participant's heirs or assigns take any action or inaction to the detriment of the Alternate Payee, the Participant and/or Participant's heirs or assigns may be required, through further order of the Court, to make sufficient payments directly to the Alternate Payee to the extent necessary to neutralize the effects of the Participant's actions or inactions and to the extent of the Alternate Payee's full entitlements hereunder.

This provision is intended to apply in situations that in the Court's opinion, have been undertaken by the Participant and/or Participant's heirs or assigns for the purpose of intentionally reducing or diminishing the rights and entitlements of the Alternate Payee as set forth herein. It should only apply to those actions or inactions deemed arbitrary and/or capricious by the Court, and not resulting from incidental (although potentially significant) effects to the Alternate Payee's benefits resulting from the Participant's normal life choices, pertinent plan provisions, and/or events beyond the Participant's control. For illustration purposes only, if the Participant returns to work after retirement at the behest of the employer, and as a result, the plan administrator reduces or suspends the Alternate Payee's benefits or early retirement subsidy payments, if any, in accordance with the terms of their plan, this may not necessarily be deemed an act that would give rise to any direct payment obligation on the part of the Participant to make up for any reduced or lost benefits to the Alternate Payee. The Court shall reserve jurisdiction to determine whether the Participant's and/or Participant's heirs' or assigns' actions or inactions have been undertaken with the intent to undermine and diminish the benefit entitlements of the Alternate Payee.

22. **Alternate Payee Is Solely Responsible for Initiating Commencement of Benefits:** It is understood that the Alternate Payee is solely responsible for taking certain proactive steps in order to initiate the commencement and receipt of benefits once the QDRO is approved, including, without limitation, requesting, completing, and submitting the appropriate distribution election forms and/or beneficiary designation forms available from the Plan Administrator.

23. **Continued Cooperation of the Parties:** The Participant and Alternate Payee shall cooperate with each other and with the Plan Administrator and/or each party's legal counsel by providing the requesting party with any information, forms, statements, and documents necessary to carry out the intentions of this Order and to establish and maintain the qualified status of the QDRO (or amended Order as applicable), including, without limitation, execution of limited authorization/release forms, plan contact information, benefit statements, election forms, summary plan descriptions ("SPDs"), and any other relevant information that can be readily obtained by the party to whom the request is made.

24. **Correcting, Suspending or Terminating Payments:** The Plan will retain any rights it may have under its terms to correct, suspend, or terminate payments to Alternate Payee and/or Participant provided that either Participant or Alternate Payee may contest such correction, suspension or termination through any administration remedies available under the Plan. Payments by the Plan pursuant to the QDRO will be without prejudice to any right the Plan has under applicable law to seek recoupment or offset for overpayment.

25. **Plan Terms:** In the case of conflict between any of the terms of this Order and the terms of the Plan, the terms of the Plan shall prevail.

IT IS SO ORDERED, this            day of                           , 20      .

BY THE COURT:

_____

_____
Deborah A. Alex-Saunders, Plaintiff

_____
Plaintiff Pro Se

_____
Malachiah Saunders, Defendant

_____
Defendant's Attorney

# MARRIAGE RECORD

*The following made application for a Marriage License, and upon oath stated:*

| | |
|---|---|
| That said Saunders, Malachi was 23 years of age, | That said Alexander, Deborah was 22 years of age, |
| his date of birth is 12/07/1946. | Her date of birth is 10/28/1947. |
| his residence was Sandusky,Erie County,OH, | Her residence was Sandusky,Erie County,OH, |
| His occupation was Machinist | Her occupation was Secretary |
| His father's name was David Saunders | Her father's name was Willis Alexander |
| His mother's maiden name was Eliza Starad | Her mother's maiden name was Thelma Bryant |
| and that he was not previously Married/Widowed. | and that she was not previously married/widowed. |

MARRIAGE CERTIFICATE NO.      23826
VOL:    40    PAGE:    86

I do hereby certify, that on 06/20/1970  , Michaelj A. Springer solemnized the Marriage of Malachi Saunders with Deborah Alexander.

Filed and Recorded 06/22/1970
James A. Young            , Judge

*I, the undersigned Judge of the Court of Common Pleas, Probate Division, within and for said County, and in whose custody the Files, Journals and Records of said Court are required by the laws of the State of Ohio to be kept, do hereby certify that the foregoing is taken and copied from the Records of said Court, that is has been compared by me with the original Record and that it is a true and correct copy thereof.*

*IN TESTIMONY WHEREOF, I hereunto subscribe my name officially and affix the seal of said Court at the Courthouse in Sandusky in said County this date of Aug  5, 2019*        .

Beverly K. McGookey

_____
                                    Judge

                                    Deputy Clerk

IN THE COMMON PLEAS COURT OF ERIE COUNTY, OHIO
DOMESTIC RELATIONS DIVISION

Malachiah Saunders
208 1/2 Hendry Street          CASE NO. 89-DR-128
Sandusky, Ohio 44870
SS#: 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
DOB: 12/07/45                  JUDGMENT ENTRY

          Plaintiff            Hon. Donald L. Ramsey

    vs/and

Deborah A. Saunders            Robert M. Reno
1441 Judy Lane                 723 Sycamore Line
Sandusky, Ohio 44870           Sandusky, Ohio 44870
SS#: 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               (419) 626-3800
DOB: 10/28/47

          Defendant

_____

          This matter came on for hearing the 2nd day of July,
1990, upon a Complaint for Divorce filed by Plaintiff. Plaintiff
appeared this date with counsel for the purpose of offering evidence
in furtherance of his cause. Defendant, by agreement, has withdrawn
all pleadings filed by her herein, the parties hereto having agreed
to the terms of this entry as hereinafter set forth.

          Upon the pleadings, evidence and stipulations adduced
herein the Court does hereby find as follows:

          1.    Plaintiff had been a resident of the State of Ohio for a period
of time in excess of six months as of the date Plaintiff filed his
Complaint for Divorce herein.

2

2.    Plaintiff and Defendant were married in Sandusky, Ohio, on June 20, 1970.

3.    Two children have been born as issue of said marriage: Matthias A. Saunders (dob 04/14/72) and Sheria E. Saunders (dob 11/12/77).

4.    Plaintiff stands entitled to a divorce from Defendant on grounds Plaintiff and Defendant are incompatible with one another.

        **WHEREFORE, it is ORDERED, ADJUDGED AND DECREED** as follows:

1.    Plaintiff shall be, and he hereby, is granted a full and final divorce from Defendant.  The contract of marriage heretofore existing between said parties shall be, and the same hereby is, forever terminated.

2.    A UCCJA affidavit has been accurately completed and filed herein pursuant to section 3109.27 of the Ohio Revised Code. Custodial home studies have been conducted and duly considered by this Court.  Pursuant to said UCCJA affidavit and said custodial home studies, as well as other evidence adduced herein, Defendant shall be, and she hereby is, granted custody of the parties' minor children.

3

3.    Plaintiff shall be afforded reasonable off-premises visitation with said minor children at such times and places as shall hereafter be agreed to by the parties.  Should Plaintiff and Defendant hereafter find themselves unable to agree as to what constitutes "reasonable visitation", Plaintiff shall be entitled to visitation per the terms of this Court's standard order, a copy of which is marked "exhibit A", attached hereto and incorporated herein.

4.    Defendant shall give the Court and Plaintiff written notice not less than forty-five (45) days in advance of any change of the said minor children's residence.

5.    Plaintiff shall pay child support to Defendant in the sum of $ 89.85 plus poundage equal to $ 1.80 for a total of $ 91.65 per week.  Said payments shall commence the 18'th day of May, 1990.  Plaintiff shall further stand individually responsible for and pay all reasonable and necessary medical, dental, optical, psychological and pharmaceutical expenses incurred by or on behalf of the parties' said minor children, that is, above and beyond the first Two Hundred Dollars ($200.00) per calender year per child, which first $200.00 per calendar per child shall be the sole responsibility of Defendant.

The order of support set forth herein is based upon the following information and is subject to the following provisions:

4

(a) The parties' respective employers, the parties' gross annual incomes and the sources of such incomes are as follows:

Plaintiff: $ 38,017.44

Delco Morain NDH
2509 Hayes Avenue
Sandusky, Ohio 44870

Defendant: $23,000.00

Help-U-Sell Real Estate
Sandusky Land Appraisal Service
1002 Columbus Avenue
Sandusky, Ohio 44870

(b) All support payments shall be made through the Child Support Enforcement Agency of Erie County and any monies, paid by Plaintiff to Defendant, other than through said Agency, shall be deemed to have been a gift and shall not be applied toward the support obligation of Plaintiff.

(c) The frequency of the support payments, as herein required, shall coincide with the pay period of the Plaintiff's current employer. If at any time Plaintiff no longer has a regular pay period, support shall be paid on a weekly basis.

(d) Plaintiff shall have the support obligation, ordered of him herein, withheld from Plaintiff's personal earnings, unemployment compensation, workers compensation, and/or his account at a financial institution. Should Plaintiff be unable to comply

5

with any of the above, he shall then post a bond pursuant to the
Ohio Revised Code. Plaintiff is hereby obligated to execute all
documents deemed necessary by the Court to place any wage
withholding orders into effect.

(e) Plaintiff shall immediately notify the Child Support
Enforcement Agency of any changes in Plaintiff's employment,
residence or source of income (including, but not limited to, wages,
military benefits, pensions, Social Security, lottery winnings,
inheritances, settlements, unemployment compensation or workman's
compensation).

(f) Each party to this action shall notify the Court in
writing of his current mailing address and current residence address
and each party shall notify the Court immediately in writing of any
changes in either of these addresses with said obligation to
continue until further order of this Court. Any failure of either
party to supply the Court with a correct mailing or residence
address, or a willful failure to immediately notify the Court in
writing of a change in either such address, is contempt of Court and
shall be punished as provided by law.

(g) Defendant shall immediately notify the Court of any
reason for which the support order called for herein shall
terminate, including but not limited to death, marriage,
emancipation, incarceration, enlistment in the Armed Services,

6

deportation, or change of legal or physical custody of the child. A willful failure to notify the Court as required above is contempt of Court and will be punished as provided by law.

(h)  Plaintiff and Defendant shall alternate from year to year with respect to the claiming of the parties' minor children as a dependents for income tax purposes.  Defendant shall be permitted to claim said minor children for the 1990 tax year and alternate with Plaintiff thereafter.  Defendant shall execute any and all waivers or other similar forms as shall hereafter be required of her so as to achieve this end.

7.    Neither party shall be required to pay alimony to the other.

8.    Plaintiff shall receive the parties' rights, title and interest in the following assets free and clear of any claim on the part of Defendant:  (a) 208 Hendry Street;  (b) the vacant lot in Florida subject to a $500.00 mortgage;  (c) the Orlando time share contract;  (d) the St. Kitts real estate;  (e) the Chevette, Cadillac and Ford truck;  (f) all household goods presently in Plaintiff's individual possession;  (g) Plaintiff's own UAW-GM pension;  (h) all monies on deposit in Tortolla; and  (i) all monies on deposit in England.  Plaintiff shall pay and hold Defendant forever harmless from all debts secured by any of the foregoing assets.

9.    Defendant shall receive the parties' rights, title and interest in the following assets free and clear of any claim on the part of

7

Plaintiff: (a) 1441 Judy Lane; (b) 1002 Columbus Avenue; (c)
Help-U-Sell; (d) Sandusky Land Appraisal Service; (e) Myrtle Beach
time share contract; (f) the vacant lot in Florida subject to no
mortgage; (g) all household goods presently in Defendant's
individual possession; and (h) the Plymouth Voyager automobile.
Defendant shall pay and hold Plaintiff forever harmless from all
debts secured by any of the foregoing assets.

10.  Plaintiff shall pay $15,000.00 cash to Defendant by not later
than June 14, 1990.

11.  Plaintiff shall remain obligated to abide by the terms of this
Court's temporary orders previously filed herein through May 18,
1990.   Child support and alimony arrearages and credits of record
as of the date of the filing hereof are hereby preserved.

12.  Except as hereinabove set forth, Plaintiff shall stand
responsible for, pay and hold Defendant forever harmless from any
and all debts incurred by Plaintiff in his individual name.  Except
as hereinabove set forth, Defendant shall stand responsible for, pay
and hold Plaintiff forever harmless from any and all debts incurred
by Defendant in her individual name.

13.  Court costs shall be divided equally between the parties.

_____
JUDGE

Approved:

_____
Plaintiff

_____
Counsel for Plaintiff

_____
Defendant

_____
Counsel for Defendant

REFERENCES:

## Klardie v. Klardie
**Date filed**: 2010-07-05T00:53:00-07:00

**Court**: Supreme Court of Georgia

...yet distributed to the debtor, under any retirement or pension plan or system: (A) Which is: (i) maintained...status of periodic payments from such a retirement or pension plan or system shall be as provided under...claim to her retirement funds and in the trial court's directive that he pay a portion of the wife&...was clearly capable of earning more income. In certain domestic cases, earning capacity is an appropriate...dependent of the debtor; (E) A payment under a pension, annuity, or similar plan or contract on account

## Matter of Ledvinka
**Date filed**: 1992-08-13T00:53:00-07:00

**Court**: United States Bankruptcy Court, M.D. Georgia

...$28,000.00 and her portion of the plan earned $10,000.00 by the time of his retirement, she would be entitled... computed by taking the earnings on her portion of the value of the retirement plan as of September 1,...value of said retirement contribution, plus the earnings thereon at the date such retirement began. That...intends to pay Plaintiff her portion of the retirement benefits when he retires. He understands that, should...should Plaintiff die before he retires, *191 her portion of the retirement benefits

## Matter of Hall
**Date filed**: 1985-06-24T00:53:00-07:00

**Court**: District Court, S.D. Georgia

...claim. Hall has no duty to make payments from the pension funds to his former wife. He has no power to terminate...extends to spouses the limitations on alienation which are applicable to the pensioners themselves. See S...., Mrs. Hall became a federal pensioner in her own right when she received an equitable share of her former...Bankr.S.D.Cal.1984) (stating that spouse receiving share of pension upon division of community assets holds...share indicates no congressional intent to diminish the quality of a spouse's pension interest.

## Porter v. Buckeye Cellulose Corp.
**Date filed**: 1989-01-10T23:53:00-08:00

**Court**: Court of Appeals of Georgia

... the claims for breach of fiduciary duty and discharge in violation of Plan rights because the court had...appellee *820 was neither a party to nor a fiduciary of the Plan. The undisputed evidence reveals that appellant... of fiduciary duty claim is preempted by 29 USC § 1109, which imposes personal liability upon plan fiduciaries...breach of Plan obligations by failing to pay benefits, wrongful discharge in violation of Plan rights, ...appellant was unlawfully discharged "for exercising his rights pursuant t

# Equitable Distribution: significant legislative amendments regarding retirement accounts and other forms of deferred compensation

Although Georgia state law dictates how IRAs are transferred and distributed, that is not true for retirement account funds. 401(k), 403(b) and other similar types of plans require special consideration for equitable distribution, as the court must follow exacting federal guidelines in dividing these plans.

### A QDRO Creates Rights to Receive Benefits

Specifically, a well-drafted QDRO creates the right of an "alternate payee" (i.e., a spouse), to receive plan benefits. Thus, for federal income tax purposes, the recipient spouse is treated as an actual plan participant, with certain rights and obligations. The ex-spouse may be permitted to withdraw a lump sum or receive payments, depending upon the terms of the specific plan

Possibly, but it really depends on the type of plan involved. Here are some plans that may allow a lump sum payment:

- 401(k)
- 403(b)
- 457 Plans (also known as Defined Contribution Plans),
- An IRA
- ESOP's
- Thrift Savings Plans

Distributive Justice refers to equitable distribution of benefits and burdens. These benefits and burdens could be in the form of income, power, wealth, education, religious activities and other economic,

## Notification of Equitable Distribution Claim for Pension Benefits

The alternate payee is seeking review of the attached QDRO In process of obtaining a federal order due to the alienation of the former spouse.

Name of participant:  Malachiah Saunders
                      190 Reserve Ave
                      Oberlin, Ohio 44074
                      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

Date of Marriage:  6/20/1970

End of Marriage:  7/02/1990

Alternate Payee:  Deborah Alex-Saunders
                  2504 Mellville Ave apt 2205
                  Decatur, Georgia 30032
                  Fax: 833-550-0548

Joinder: Pension Benefit Guaranty Corporation
         PO Box 15170
         Alexandria, VA 22315-1750

In the United States District Court for the Northern District
Division of Atlanta, Georgia

Order

Now this day of _____, Plaintiff, Deborah
Alex-Saunders case _____

**Ordered, Judged and Decreed tha**t, said Qualified Divorce
Relations Order be, and hereby is a part of  this

Order and shall be entered as part of this Order  as equitable
distribution and it is further

**Ordered, Judged and Decreed that Defendant,** Malachiah
Saunders shall forthwith relinquish possession and control of, and
delivered to plaintiff, funds described, known as and designated
as  Qualified Domestic Relations Order and to which description
is attached to said settlement  and designated as exhibit "A" and
Defendant shall hereby be prohibited by using, possessing,
transferring or otherwise benefiting from aforesaid funds;

A violation of this order shall subject this Defendant to Contempt
of Court proceedings and payment to Plaintiff of liquidated
damages in the amount of Two hundred & fifty dollars
Without prior demand by Plaintiff.

**BY THE COURT**

_____
  Judge