RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 19 2021

KEVIN P. WEIMER, Clerk
By: [signature] Deputy Clerk

**IN THE DISTRICT COURT OF NORTHERN GEORGIA**
**ATLANTA DIVISION**

**DEBORAH A. SAUNDERS**

**Plaintiff**

**vs.**

**MALACHIAH SAUNDERS, PENSION BENEFIT GUARANTY CORPORATION (ENJOINED)**

**Defendant, Third-Party Defendant**

1:21-cv-01594-MLB

**CASE NO. ~~CV-2021~~**

Amended Petition

**PETITION FOR DECLARATORY JUDGMENT & INJUNCTIVE RELIEF UNDER A QUALIFIED DOMESTIC RELATIONS ORDER**

Unwittingly in 1970 Deborah Ann Saunders did marry defendant based on conditions of Permanent Residence for Malachiah Saunders, an immigrant and sponsored his welfare. Deborah Saunders had two children from Malachiah.

Ironically, she petitioned that his apprenticeship program be recognized as an engineering degree and got him a job at the GM Delphi Plant in Sandusky, Ohio 1977. Only to find out, years later, that in a scheme to defraud, the defendant's marriage was never reported or disclosed to the GM/ Delphi Benefits office.

Because there was no information on file regarding ex-spouse, (Deborah Saunders) PBGC declared that under privacy laws would not provide any information regarding Malachiah Saunders benefit file. Although, a copy of the divorce papers were offered. PBGC refused. Both the active and non-active benefit file of the defendant did not declare such a marriage. Even when paying child support, the children were filed as illegitimate.

Nevertheless, the plaintiff qualified as the former-spouse under the Applicable Plan,

GENERAL MOTORS INCOME SECURITY PLAN FOR HOURLY-RATE EMPLOYEES is a **Defined Contribution Plan** which has an account specified for the individual employee where a defined amount is being contributed to the plan by the individual, the employer or both. Examples of this type of plan are 401(k), 401(a), Employee Stock Ownership Plan (ESOP), Savings Plans and Profit Sharing Plans.

To qualify for QDRO the parties must have been married for a minimum of ten years;twenty years in fact (Exhibit A) and has rights of entitlement created by ERISA . As, ex-wife, a "former spouse" for purposes of dividing the 401(k) as "property" and by using a QDRO; which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan of GM/Delphi defined benefits.

2. The plaintiff's federal rights were violated and harmed by *denial* of thousands of dollars due as the entitled alternate payee pension plan funds for the last 14 years because defendant hide the status of his first marriage from the Employer Benefits Office.

3. Defendant did cause harm to plaintiff by alienating pension funds fraudulently not reporting or disclosing the alternate payee's rights to the Plan Administrator

at time of retirement.

4. Plan funds were vested benefits, not settlement proceeds.

On record, several District Courts provide a fairly technical – description of how QDROs interact with federally protected retirement plans and such plans have been provided by actuary appraisers. See attachment.

Therefore, when there is no cooperation, & one side refuses to participate, there is no barrier to achieving a fully enforceable QDRO drafted and signed solely by the prevailing party.

In general, ERISA and the Code do not permit a participant to assign or alienate the participant's interest in a retirement plan to another person. These "anti-assignment and alienation" rules are intended to ensure that a participant's retirement benefits are actually available to provide financial support during the participant's & ex-spouse retirement years.

The Employee Retirement Income Security Act of 1974 (ERISA), as relevant here, obligates administrators to manage ERISA plans "in accordance with the documents and instruments governing" them, 29 U. S. C. §1104(a)(1)(D); requires covered pension benefit plans to "provide that benefits … may not be assigned or alienated," §1056(d)(1);

MOTION FOR JUDGMENT AS A MATTER OF LAW

1. In 1970 plaintiff did  marry  Malachiah Saunders based on conditions for Permanent Residence for Malachiah Saunders, as an immigrant and sponsored his welfare.

2. Defendant is now a retiree, and at all times relevant to this Complaint was a participant in employee retirement plans defined for hourly employees at GM/DELPHI during 20 years of marriage.

3. In 2007,  Malachiah Saunders became a retired participant under employee benefit plans administered by PBGC and governed by the Employee Retirement Income Security Act of 1974 (ERISA)

4. Defendant receives  predetermined monthly retirement benefit upon reaching a specific age without reporting or disclosing the ex-spouse status which prevented or alienated entitlement to pension funds. (Exhibit B)

5. This defendant's conduct indisputably and clearly demonstrates that, *inter alia,* the defendant  did willfully alienate the rights of the ex-spouse of  the qualified divorce retirement benefits by refusing to disclose to the pension plan administrator of a twenty year marriage while employee was active participant  in GM/Delphi defined pension plan.


6.Defendant violated Plaintiffs' entitlement rights to pension plans by failure to disclose benefits **provided** under a Employee plan may not be assigned or **alienated**; to ensure that the employee's accrued benefits are actually available for retirement purposes. See divorce decree and refused summons in court for an opportunity to disclose pensions benefits for ex-spouse.

7. Defendant violated Plaintiffs' right by willful omission of the ex-spouse status to prevent any interests or plan benefits entitled to. The defendant willfully did not report or disclose the ex-spousal status to Plan Administrator and not addressing distribution of such funds in the divorce proceedings.

8. Defendants willfully violated the reporting and disclosure requirements of ERISA's rights given alternate payees under the law and fraudulently secured savings & 401K funds for himself.

*Sections 501 and 502 authorize, respectively, criminal and civil enforcement of the Act. While the former section provides for criminal penalties against any person who willfully *violates any of the reporting and disclosure* requirements of the Act,

9.The fundamental purpose and goals of ERISA-"to ensure that both spouses would receive sufficient funds to afford them security during their lifetimes, not to arrange for an opportunity for a predeceasing non-employee spouse to leave a part of her surviving husband's pension rights to others." (Id. at p. 1457.)

10. In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse.

11.The Court noted that a plan administrator is obliged to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA, and the Act provides no exemption from this duty when it comes time to pay benefits.

12.Defendant did by fraud of omission of ex-spouse status unjustly possess the alternate payee share of pension and denied equitable distribution of the estate for some fourteen years.

**13.Georgia** is an **equitable distribution** state, meaning the courts recognize that both spouses have an **equitable** interest in all marital property acquired during the course of the marriage which aligns with ERISA law.

Facts and law combine to support motion. As a general rule, ERISA preempts any "state law" that "relates to" employee benefit plans. Further, ERISA contains the basic prohibition that a court may not order a plan to provide any benefit not explicitly permitted by its plan documents.

Further, by definition, a QDRO cannot award benefits that have been awarded to another alternate payee. In other words, benefits are paid to former spouses on a first-come, first- served basis, i.e., favoring the first-approved QDRO to be entered and served. Any subsequent marriages do not take the benefits due the first spouse.

In cases where there is no cooperation, or one side refuses to participate, there is no barrier to achieving a fully enforceable QDRO *drafted and signed solely by the prevailing party.* If the underlying order calling for entry of the QDRO is sufficient the proposed QDRO should be submitted to the plan administrator for submission to the court for signature and filing clear as to terms, there does not even appear to be any need for a further hearing or other court proceeding; in such circumstances, several courts have expressed the willingness to sign off on the formal orders upon direct mailed submission.

**CHAPTER 18 - EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM**

**SUBCHAPTER§1132. Civil enforcement**

**(a) Persons empowered to bring a civil action**

**A civil action may be brought—**

**(1) by a participant or beneficiary—**

**(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; (A) for the relief provided for in subsection (c) of this section.**

**To recover the [473 U.S. 134, 147] benefits due her, the plaintiff has filed an action pursuant to 502(a)(1)(B) to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the QDRO plan as ordered, and to enjoin the plan administrator from improperly refusing to pay benefits in the future.**

**The fundamental purpose and goals of ERISA-"to ensure that both spouses would receive sufficient funds to afford them security during their lifetimes, not to arrange for an opportunity for a predeceasing non-employee spouse to leave a part of her surviving husband's pension rights to others." (Id. at p. 1457.)**

**A Qualified Domestic Relations Order (QDRO) is a type of domestic relations order (DRO) which creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan. This document was never placed in divorce proceedings.**

**In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan**

**beneficiary, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse.**

**" The Court noted that a plan administrator is obliged to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA, and the Act provides no exemption from this duty when it comes time to pay benefits."**

***Section 502(a)(3) claim. It ruled that the phrase "equitable relief" rarely includes relief in the form of a monetary award and only when the money has been unjustly possessed by the defendant.***

Plaintiffs pray for relief as follows: that the court grant judgment without sending the case to a jury. A. That this Court issue a Temporary Restraining Order, Preliminary Injunction, and a Permanent Injunction enjoining Pension Benefit Guaranty Corp,, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in concert or participation with them, from enforcing a freeze on all accounts until released by court order.

B. Distribution of funds shall be paid per the QDRO (attached) as prepared by the prevailing party.  C. Upon the death of the participant the remaining distributions are paid to the estate of the ex-spouse to maintain any estate plans in place and protect the heirs.

D. For compensatory damages in excess of $235,200; E. For punitive damages; F. For costs, interest and attorney's fees; and, G. any other relief that this court deems just and appropriate.

This is lawful action for damages and/or statutory fines, equitable distribution, per declaratory judgment.

Respectfully submitted on April 9, 2021,

DEBORAH A. SAUNDERS
2504 Mellville Ave
Decatur, Georgia 30032
businessboxinc@aol.com
(770) 912-1108

**Deborah A Alex-Saunders**
2504 Melville Ave Apt 2205
Decatur, GA 30032
770-912-1108

IN THE DISTRICT COURT OF STATE OF GEORIGA

DIVISION OF ATLANTA, GA

In the Matter of:

DEBORAH ANN ALEX-SAUNDERS,

Plaintiff,

NO.

Vs.

MALACHIAH SAUNDERS

Re: Case 89-DR-128

Defendant,

# QUALIFIED DOMESTIC RELATIONS ORDER

## IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

This Order is intended to be a qualified domestic relations order (QDRO), as that term is defined in section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (ERISA) and section 414(p) of the Internal Revenue Code of 1986, as amended (Code). This Order is granted in accordance with applicable domestic relations laws of the State of Ohio, which relate to marital property rights, child support, and/or spousal support between spouses or between a spouse and a former spouse in matrimonial actions.

### SECTION 1. IDENTIFICATION OF PLAN

This Order applies to benefits under the Delphi Hourly-Rate Employee Pension Plan (Plan). The Pension Benefit Guaranty Corporation (PBGC) is trustee of the Plan.

### SECTION 2. IDENTIFICATION OF PARTICIPANT AND ALTERNATE PAYEE

**Participant Information:**

Malachiah Saunders is eligible to receive a benefit from the Plan and is hereafter referred to as the (Participant). The Participant's mailing address is 190 Reserve Ave, Oberlin, Ohio 44074. The Participant's Social Security Number is (See Confidential Information Form). The Participant's Birth Date is (See Confidential Information Form).

The Participant is receiving benefits from PBGC with respect to this Plan.

**Alternate Payee Information:**

Deborah Ann Alex-Saunders is hereafter referred to as the (Alternate Payee). The Alternate Payee's mailing address is 2504 Mellville Ave, Apt 2205, Decatur, GEOGRIA 30032. The Alternate Payee's Social Security Number is (See Confidential Information

Form). The Alternate Payee's Birth Date is (See Confidential Information Form).

The Alternate Payee is the Former Spouse of the Participant and shall have the duty to notify the PBGC in writing of any changes in her mailing address subsequent to the entry of this Order.

**SECTION 3. AMOUNT OF BENEFIT TO BE PAID TO ALTERNATE PAYEE**

Starting at the time specified in section 5, PBGC shall pay to the Alternate Payee Twenty-Two Percent (22 %) of each of the Participant's monthly benefit payments.

**SECTION 4. PBGC BENEFIT ADJUSTMENTS**

If PBGC adjusts the Participant's benefit from the benefit payable under the Plan, any reduction shall be applied by decreasing pro rata the Participant's and the Alternate Payee's benefits, and any increase shall be applied by increasing pro rata the Participant's and the Alternate Payee's benefits.

**SECTION 5. BENEFITS START**

The Alternate Payee's commencement of benefits shall be such future date as the Alternate Payee elects. This date must be the first day of a month, but not earlier than the later of the date PBGC receives this domestic relations order and the Participant's annuity starting date. Payment shall not be made until PBGC qualifies this domestic relations order and receives a PBGC benefit application from the Alternate Payee.

**SECTION 6. FORM OF BENEFIT**

The Alternate Payee shall not have the right to elect a form of benefit. The amount paid to the Alternate Payee will be determined by the benefit form elected by the Participant.

**SECTION 7. BENEFITS STOP**

Except for any survivor benefits described in Section 10, PBGC shall make payments to the Alternate Payee until the earlier of the Participant's or Alternate Payee's death.

**SECTION 8. DEATH OF PARTICIPANT**

Except for any survivor benefits described in Section 10, if the Participant dies before the Alternate Payee, the Alternate Payee is not entitled to any payments as of the first of the month following the Participant's death.

**SECTION 9. DEATH OF ALTERNATE PAYEE**

If the Alternate Payee dies before commencing benefits, the shared payment shall revert to the Participant.

**SECTION 10. SURVIVING SPOUSE RIGHTS OF ALTERNATE PAYEE**

PBGC shall NOT treat the Alternate Payee as the Participant's spouse for purposes of the Participant's qualified joint and survivor annuity (QJSA).

**SECTION 11. EARLY RETIREMENT SUBSIDY**

PBGC shall pay the Alternate Payee a pro rata share of any early retirement subsidy that is paid to the Participant at retirement. The Alternate Payee shall be entitled to a pro rata share of any early retirement subsidy provided to the Participant on the date the Participant commences

benefits, but not before. If the Alternate Payee commences receiving benefits on an unsubsidized basis before the Participant retires with a subsidized benefit, then the amounts payable to the Alternate Payee shall be increased when the Participant retires with a subsidized benefit in accordance with PBGC's practices and actuarial principles in order to provide the Alternate Payee with a pro rata share of the subsidy. The pro rata share shall be calculated in the same manner as the Alternate Payee's share of the Participant's retirement benefits is calculated pursuant to the terms of this Order.

**SECTION 12. OTHER REQUIREMENTS**

Nothing in this Order shall require PBGC:

a. To pay any benefits not permitted under ERISA or the Code;
b. To provide any type or form of benefit or any option not otherwise provided under the Plan or paid by PBGC;
c. To pay benefits to the Participant and Alternate Payee with a total value that exceeds the value of the benefits the Participant otherwise would receive under Title IV of ERISA;
d. To pay benefits to the Alternate Payee that are required to be paid to another alternate payee under another QDRO that is in effect prior to this Order;
e. To pay benefits to the Alternate Payee for any period before PBGC receives this Order;
f. To pay benefits as a separate interest to the Alternate Payee if the Participant is already receiving benefit payments; or
g. To change the benefit form or the beneficiary of a joint life annuity if the Participant is already receiving benefit payments.

**SECTION 13. RESERVATION OF JURISDICTION**

The Court reserves jurisdiction to amend this Order to establish or maintain its status as a QDRO under ERISA and the Code.

IT IS SO ORDERED, this ______ day of ______________________, 20___.

BY THE COURT:

______________________________

D.Saunders
Vs.
M. Saunders,
PBGC

# Brief in Support
## Contents

I. JURISDICTION

II. KEY ELEMENT

III. ERISA

IV. QDRO

V. ERISA PREEMPTS

VI. HISTORY

VII. ENJOIN PLAN ADMINISTRATOR

VIII. NO COOPERATION

IX. ARGUMENT & CITATION

X. STATE OF GEORGIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

Atlanta, Georgia

Deborah A. Saunders
2504 Mellville Ave -2205
Decatur, Georgia 30032

Case ____________________

Plaintiff propria persona

vs.

Malachiah Saunders
190 Reserve Ave
Oberlin, Ohio 44030

Jury trial - None

**Enjoined**

Pension Benefit Guaranty Corporation |
PO Box 151750
Alexandria, VA 22315-1750

# BRIEF IN SUPPORT

## I. JURISDICTION AND VENUE

This case is based on a violation of federal law. 28 U.S.C. § 1331. This is called a "federal question" case. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the federal laws of the United States.

2. This claim involves damages in excess of $75,000.

3. Diversity of citizenship can sometimes due to one party to a lawsuit is a citizen of a state and the opposing party is an immigrant/ alien (someone who is not a citizen of the United States) [28 U.S.C. § 1332(a)(2)]

4. Venue is proper pursuant to 28 U.S.C. 1391(b) because the events giving rise to the allegations in this complaint occurred in this district and the alleged harm has occurred with this jurisdiction.

5. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

II. Key Element:

ERISA provided that pension benefits may not be "assigned or alienated." In general, ERISA and the Code do not permit a participant to assign or alienate the participant's interest in a retirement plan to another person. These "anti-assignment and alienation" rules are intended to ensure that a participant's retirement benefits are actually available to provide financial support during the retirement years.

III. ERISA is organized into four Titles:

ERISA is organized into four Titles:

1. Title I addresses definitions ; reporting and disclosure requirements ; minimum participation and vesting standards and the form of benefit payments ; minimum funding standards ; plan and trust requirements and related fiduciary responsibilities ; administration and enforcement, including claims procedures, enforcement, and remedies ; and group health plan and COBRA requirements.

2. Title II addresses amendments to the Internal Revenue Code.15

3. Title III addresses Department of Labor jurisdiction and administrative provisions

4. Title IV addresses plan termination insurance and the Pension Benefit Guaranty Corporation.

## IV. QDRO

Under the federal ERISA/REA statutory scheme, **any judgment**, decree, or order dealing with alimony or support for a spouse, former spouse, child, or other dependent made according to local domestic relations law is considered a "domestic relations order" under federal law.

It becomes a Qualified Domestic Relations Order, or "QDRO," and must be recognized and enforced by an ERISA-qualified pension plan, when it creates or recognizes one of the listed classes of persons as an "Alternate Payee" with a right to receive all or any portion of the benefits normally payable to a participant in that plan. This was never done in plaintiff/defendant divorce proceedings.

There is more to the statutory scheme then just the stream of payments while all parties remain alive. In an effort to protect spouses, Congress made survivorship benefits for **spouses mandatory** in defined benefit plans unless the spouse voluntarily waived such benefit.

Since retirement options usually need to be selected at the time of retirement, it is important to know during the divorce litigation whether the employee has already retired. If the worker has not yet retired, then all options should remain available.

In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse.

## V. ERISA PREEMPTS

As a general rule, ERISA preempts any "state law" that "relates to" employee benefit plans. Further, ERISA contains the basic prohibition that a court may not order a plan to provide any benefit not explicitly permitted by its plan documents.

Further, by definition, a QDRO cannot award benefits that have been awarded to another alternate payee. In other words, benefits are paid to former spouses on a first-come, first- served basis, i.e., favoring the first-approved QDRO to be entered and served.

In cases where there is no cooperation, or one side refuses to participate, there is no barrier to achieving a fully enforceable QDRO *drafted and signed solely by the prevailing party.* If the underlying order calling for entry of the QDRO is sufficient the proposed QDRO should be submitted to the plan for "pre approval" before submission to the court for signature and filing clear as to terms, there does not even appear to be any need for a further hearing or other court proceeding; in such circumstances, several courts have expressed the willingness to sign off on the formal orders upon direct mailed submission.

In general, ERISA and the Code do not permit a participant to assign or alienate the participant's interest in a retirement plan to another person. These "anti-assignment and alienation" rules are intended to ensure that a participant's retirement benefits are actually available to provide financial support during the retirement years.

" The Court noted that a plan administrator is obliged to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA, and the Act provides no exemption from this duty when it comes time to pay benefits."

## VI. HISTORY

Plaintiff is the former-spouse under the qualified domestic relations (QDRO) exception of being married for more than ten years, twenty years in fact (Exhibit A) and has rights of entitlement created by ERISA . As, ex-wife, a "former spouse" for purposes of dividing the 401(k) as "property" and by using a QDRO; which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan of GM/Delphi defined benefits.

Unwittingly, plaintiff did marry defendant based on conditions for Permanent Residence for defendant, as an immigrant and sponsored his welfare. Plaintiff petitioned that his apprenticeship program be recognized as an engineering degree and got him the job at the GM Delphi Plant in Sandusky, Ohio in 1977. Only to find out, years later, that in a scheme to defraud, to keep the pension monies, the defendant's marriage nor divorce was ever reported or disclosed to the GM/Delphi Benefits office.

Deborah Saunders discovered her alternate payee's rights to entitlement of GM/Delphi defined benefits when applying for Medicaid in Georgia in 2019. The Medicaid representative suggested that she seek out her status regarding QDRO. It was only then, she discovered the ongoing scheme by her ex-husband effort to alienate her from any retirement funds and benefits by failure to report or disclose the marriage. No amount of outreach moved him to settle this matter. Later, the Ohio domestic court declared that they lacked jurisdiction over ERISA federal law without a QDRO.

**Defendant** is a retiree, and at all times relevant to this Complaint as a participant in employee retirement plans defined for hourly employees at GM/DELPHI. In 2007 defendant became a retired participant under

employee benefit plans administered by PBGC and governed by the Employee Retirement Income Security Act of 1974 (ERISA)receiving predetermined monthly retirement benefit upon reaching a specific age without reporting or disclosing the ex-spouse status of entitlement to pension funds.

## VII. Enjoin Plan Administrator

Pension Benefit Guaranty Corporation |

The PBGC is the agency responsible for administering pension insurance pursuant to Title IV of ERISA. "Before ERISA, lack of oversight and legal standards often left pension plans without enough money, and employees who counted on those funds with nothing for retirement." *Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, **902 F.3d 597** , **601** (6th Cir. 2018) (internal citations omitted). In an effort to solve this problem, Congress established the PBGC to provide insurance for workers promised a defined pension benefit in the event that the sponsor terminated the retirement plan. *Nachman Corp. v. Pension Ben. Guar. Corp.*, **446 U.S. 359** , **375** , **100 S. Ct. 1723** , **64 L. Ed. 2d 354** (1980). The very purpose of the PBGC is to ensure that retirees receive their benefits notwithstanding their former employers' financial turmoil.

Because there was omission of information on file regarding ex-spouse, (Deborah Saunders) PBGC declared that under privacy laws would not provide any information regarding defendant Saunders benefit file. Although, a copy of the divorce papers were offered. PBGC refused. Both the active and non-active file of the defendant did not declare such a marriage.

## VIII. NO Cooperation

Therefore, when there is no cooperation, & one side refuses to participate, there is no barrier to achieving a fully enforceable QDRO drafted and signed solely by the prevailing party.

*"ERISA is a federal regulatory scheme that governs employee benefit plans; all benefit plans must conform with ERISA reporting, disclosure, and fiduciary requirements. Boggs v. Boggs, 520 U.S. 833, 841 (1997). Pension plans must also comply with participation, vesting, and funding requirements. Id. As a general matter, pension plans **may not be assigned or alienated.** 29 U.S.C. § 1056(d)(1). An exception to this general rule is made for QDROs. 29 U.S.C. § 1056(d)(3).d*

*The Retirement Equity Act of 1984 (REA) amended ERISA to ensure pension income for surviving spouses. Boggs, 520 U.S. at 843. As specifically relevant to this case, the REA expanded ERISA protections by providing that "if a vested participant dies before the annuity start date, leaving a surviving spouse to whom he has been married for at least one year, a qualified preretirement survivor annuity shall be provided to the surviving spouse." Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1091, 1095 (9th Cir. 2006); 29 U.S.C. § 1055(a)(2).*

## IX. Argument & Citations of Authority

1. Defendants violated Plaintiffs' entitlement rights to pension plans by failure to disclose benefits **provided** under a Employee plan may not be assigned or **alienated**; to ensure that the employee's accrued benefits are actually available for retirement purposes.

Employee Retirement Income Security Act of 1974, known ERISA," codified at 29USC § 1001 et seq. of ERISA §206(d)(1),

2. Defendants violated Plaintiffs' right by willful omission of the ex-spouse status to prevent any interests or plan benefits entitled to. The defendant willfully did not report or disclose the ex-spousal status to Plan Administrator and not addressing distribution of such funds in the divorce proceedings.

**§ 1.401(a)-13 Assignment or alienation of benefits.**
***No assignment or alienation* -(ii) Any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.**

3. Sections 501 and 502 authorize, respectively, criminal and civil enforcement of the Act. While the former section provides for criminal penalties against any person who willfully *violates any of the reporting and disclosure* requirements of the Act,

**] Section 501 reads as follows: "Any person who willfully violates any portion of part 1 of this subtitle, or any regulation or order issued under any such provision, shall upon conviction be fined not more than $5,000 or imprisoned not more than one year, or both; except that in the case of such violation by a person not an individual, the fine imposed upon such person shall be a fine not exceeding $100,000." 88 Stat. 891, 29 U.S.C. 1131**

4. **After such notification, the Plan must affect a participant's account, the Administrator must place a hold on the participant's account, which will prevent loan issuances, in-service withdrawals or distribution of benefits.**

To recover the [473 U.S. 134, 147] benefits filed an action pursuant to 502(a)(1)(B) to recover accrued benefits, t**o obtain a declaratory judgment that she is entitled to benefits** under the provisions of the QDRO plan as ordered, and to enjoin the plan administrator from improperly refusing to pay benefits in the future

5. Fraud of omission of ex-spouse status unjustly possess the alternate payee share of pension and benefit funds for some twenty years.

*Section 502(a)(3) claim. It ruled that the phrase "equitable relief" rarely includes relief in the form of a monetary award and only when the money has been unjustly possessed by the defendant.*

6. **Georgia** is an **equitable distribution** state, meaning the courts recognize that both spouses have an **equitable** interest in all marital property acquired during the course of the marriage which aligns with ERISA law.

Equitable Distribution: significant legislative amendments regarding retirement accounts and other forms of deferred compensation

Although Georgia state law dictates how IRAs are transferred and distributed, that is not true for retirement account funds. 401(k), 403(b) and other similar types of plans require special consideration for equitable distribution, as the court must follow exacting federal guidelines in dividing these plans.

**A QDRO Creates Rights to Receive Benefits**

Specifically, a well-drafted QDRO creates the right of an "alternate payee" (i.e., a spouse), to receive plan benefits. Thus, for federal income tax purposes, the recipient spouse is treated as an actual plan participant, with certain rights and obligations. The ex-spouse may be permitted to withdraw a lump sum or receive payments, depending upon the terms of the specific plan

D.Saunders
Vs.
M.Saunders, PBGC

# EXHIBITS

1. Marriage Certificate
2. Divorce Decree

# MARRIAGE RECORD

*The following made application for a Marriage License, and upon oath stated:*

That said Saunders, Malachi was 23 years of age,
his date of birth is 12/07/1946.
his residence was Sandusky,Erie County,OH,
His occupation was Machinist
His father's name was David Saunders
His mother's maiden name was Eliza Starad
and that he was not previously Married/Widowed.

That said Alexander, Deborah was 22 years of age,
Her date of birth is 10/28/1947.
Her residence was Sandusky,Erie County,OH,
Her occupation was Secretary
Her father's name was Willis Alexander
Her mother's maiden name was Thelma Bryant
and that she was not previously married/widowed.

**MARRIAGE CERTIFICATE NO. 23826**
**VOL: 40 PAGE: 86**

**I do hereby certify, that on 06/20/1970 , Michaelj A. Springer solemnized the Marriage of Malachi Saunders with Deborah Alexander.**

**Filed and Recorded 06/22/1970**
**James A. Young , Judge**

***I, the undersigned Judge of the Court of Common Pleas, Probate Division, within and for said County, and in whose custody the Files, Journals and Records of said Court are required by the laws of the State of Ohio to be kept, do hereby certify that the foregoing is taken and copied from the Records of said Court, that is has been compared by me with the original Record and that it is a true and correct copy thereof.***

***IN TESTIMONY WHEREOF, I hereunto subscribe my name officially and affix the seal of said Court at the Courthouse in Sandusky in said County this date of Aug 5, 2019 .***

**Beverly K. McGookey**
**Judge**

Valerie Ripley
**Deputy Clerk**

IN THE COMMON PLEAS COURT OF ERIE COUNTY, OHIO
DOMESTIC RELATIONS DIVISION

Malachiah Saunders
208 1/2 Hendry Street
Sandusky, Ohio 44870
SS#: 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
DOB: 12/07/45

Plaintiff

vs/and

Deborah A. Saunders
1441 Judy Lane
Sandusky, Ohio 44870
SS#: 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
DOB: 10/28/47

Defendant

CASE NO. 89-DR-[illegible]

JUDGMENT ENTRY

Hon. Donald L. Ramsey

Robert M. Reno
725 Sycamore Line
Sandusky, Ohio [illegible]
(419) 626-3800

---

This matter came on for hearing the 2nd day of July, 1990, upon a Complaint for Divorce filed by Plaintiff. Plaintiff appeared this date with counsel for the purpose of offering evidence in furtherance of his cause. Defendant, by agreement, has withdrawn all pleadings filed by her herein, the parties hereto having agreed to the terms of this entry as hereinafter set forth.

Upon the pleadings, evidence and stipulations adduced herein the Court does hereby find as follows:

1. Plaintiff had been a resident of the State of Ohio for a period of time in excess of six months as of the date Plaintiff filed his Complaint for Divorce herein.

2. Plaintiff and Defendant were married in Sandusky, Ohio, on June 20, 1970.

3. Two children have been born as issue of said marriage: Matthias A. Saunders (dob 04/14/72) and Sheria S. Saunders (dob 11/12/77).

4. Plaintiff stands entitled to a divorce from Defendant on grounds Plaintiff and Defendant are incompatible with one another.

WHEREFORE, it is ORDERED, ADJUDGED AND DECREED as follows:

1. Plaintiff shall be, and he hereby, is granted a full and final divorce from Defendant. The contract of marriage heretofore existing between said parties shall be, and the same hereby is, forever terminated.

2. A UCCJA affidavit has been accurately completed and filed herein pursuant to section 3109.27 of the Ohio Revised Code. Custodial home studies have been conducted and duly considered by this Court. Pursuant to said UCCJA affidavit and said custodial home studies, as well as other evidence adduced herein, Defendant shall be, and she hereby is, granted custody of the parties' minor children.

3. Plaintiff shall be afforded reasonable off-premises visitation with said minor children at such times and places as shall hereafter be agreed to by the parties. Should Plaintiff and Defendant hereafter find themselves unable to agree as to what constitutes "reasonable visitation", Plaintiff shall be entitled to visitation per the terms of this Court's standard order, a copy of which is marked "exhibit A", attached hereto and incorporated herein.

4. Defendant shall give the Court and Plaintiff written notice not less than forty-five (45) days in advance of any change of the said minor children's residence.

5. Plaintiff shall pay child support to Defendant in the sum of $ 89.85 plus poundage equal to $ 1.80 for a total of $ 91.65 per week. Said payments shall commence the 18'th day of May, 1990. Plaintiff shall further stand individually responsible for and pay all reasonable and necessary medical, dental, optical, psychological and pharmaceutical expenses incurred by or on behalf of the parties' said minor children, that is, above and beyond the first Two Hundred Dollars ($200.00) per calendar year per child, which first $200.00 per calendar per child shall be the sole responsibility of Defendant.

The order of support set forth herein is based upon the following information and is subject to the following provisions:

924

(a) The parties' respective employers, the parties' gross annual incomes and the sources of such incomes are as follows:

Plaintiff: $ 38,017.44

Delco Morain NDH
2509 Hayes Avenue
Sandusky, Ohio 44870

Defendant: $28,000.00

Help-U-Sell Real Estate
Sandusky Land Appraisal Service
1002 Columbus Avenue
Sandusky, Ohio 44870

(b) All support payments shall be made through the Child Support Enforcement Agency of Erie County and any monies, paid by Plaintiff to Defendant, other than through said Agency, shall be deemed to have been a gift and shall not be applied toward the support obligation of Plaintiff.

(c) The frequency of the support payments, as herein required, shall coincide with the pay period of the Plaintiff's current employer. If at any time Plaintiff no longer has a regular pay period, support shall be paid on a weekly basis.

(d) Plaintiff shall have the support obligation, ordered of him herein, withheld from Plaintiff's personal earnings, unemployment compensation, workers compensation, and/or his account at a financial institution Should Plaintiff be unable to comply

with any of the above, he shall then post a bond pursuant to the Ohio Revised Code. Plaintiff is hereby obligated to execute all documents deemed necessary by the Court to place any wage withholding orders into effect.

(e) Plaintiff shall immediately notify the Child Support Enforcement Agency of any changes in Plaintiff's employment, residence or source of income (including, but not limited to, wages, military benefits, pensions, Social Security, lottery winnings, inheritances, settlements, unemployment compensation or workman's compensation).

(f) Each party to this action shall notify the Court in writing of his current mailing address and current residence address and each party shall notify the Court immediately in writing of any changes in either of these addresses with said obligation to continue until further order of this Court. Any failure of either party to supply the Court with a current mailing or residence address, or a willful failure to immediately notify the Court in writing of a change in either such address, is contempt of Court and shall be punished as provided by law.

(g) Defendant shall immediately notify the Court of any reason for which the support order called for herein shall terminate, including but not limited to death, marriage, emancipation, incarceration, enlistment in the Armed Services.

924

deportation, or change of legal or physical custody of the child. A willful failure to notify the Court as required above is contempt of Court and will be punished as provided by law.

(h) Plaintiff and Defendant shall alternate from year to year with respect to the claiming of the parties' minor children as a dependents for income tax purposes. Defendant shall be permitted to claim said minor children for the 1990 tax year and alternate with Plaintiff thereafter. Defendant shall execute any and all waivers or other similar forms as shall hereafter be required of her so as to achieve this end.

7. Neither party shall be required to pay alimony to the other.

8. Plaintiff shall receive the parties' rights, title and interest in the following assets free and clear of any claim on the part of Defendant: (a) 208 Hendry Street; (b) the vacant lot in Florida subject to a $500.00 mortgage; (c) the Orlando time share contract; (d) the St. Kits real estate; (e) the Chevette, Cadillac and Ford truck; (f) all household goods presently in Plaintiff's individual possession; (g) Plaintiff's own UAW-GM pension; (h) all monies on deposit in Tortoila; and (i) all monies on deposit in England. Plaintiff shall pay and hold Defendant forever harmless from all debts secured by any of the foregoing assets.

9. Defendant shall receive the parties' rights, title and interest in the following assets free and clear of any claim on the part of

Plaintiff: (a) 1441 Judy Lane; (b) 1092 Columbus Avenue; (c) Help-U-Sell; (d) Sandusky Land Appraisal Service; (e) Myrtle Beach time share contract; (f) the vacant lot in Florida subject to no mortgage; (g) all household goods presently in Defendant's individual possession; and (h) the Plymouth Voyager automobile. Defendant shall pay and hold Plaintiff forever harmless from all debts secured by any of the foregoing assets.

10. Plaintiff shall pay $15,000.00 cash to Defendant by not later than June 14, 1990.

11. Plaintiff shall remain obligated to abide by the terms of this Court's temporary orders previously filed herein through May 18, 1990. Child support and alimony arrearages and credits of record as of the date of the filing hereof are hereby preserved.

12. Except as hereinabove set forth, Plaintiff shall stand responsible for, pay and hold Defendant forever harmless from any and all debts incurred by Plaintiff in his individual name. Except as hereinabove set forth, Defendant shall stand responsible for, pay and hold Plaintiff forever harmless from any and all debts incurred by Defendant in her individual name.

13. Court costs shall be divided equally between the parties.

JUDGE

Approved:

Plaintiff

Counsel for Plaintiff

Defendant

Counsel for Defendant

CERTIFIED TO BE A TRUE COPY OF THE ORIGINAL EXCEPT WHERE REDACTED AS REQUIRED BY LAW
FILED July 2, 1990
CERTIFIED THIS 24 DAY OF July 2019
DEPUTY CLERK OF COURTS, ERIE COUNTY, OHIO