FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 20 2022

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Deborah A. Saunders

Plaintiff,

File No. 1:21-cv-01594-MLB

US Attorney General, Involuntary Plaintiff

Attorney General for State of Georgia, Involuntary Plaintiff

Vs.

Malachiah Saunders

Defendant

Enjoined
PUBLIC BENEFIT GUARANTY CORPORATION

Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on all counts in their Verified

Complaint for Declaratory and Injunctive Relief (Doc. 1) and Amended

Complaint. (Doc. 2)

Plaintiff's file herewith

• Plaintiffs' Memorandum Supporting Their Motion for

  Summary Judgment,

• Plaintiffs' Statement of Undisputed Facts,

  • Arguments

  • Standard of Review & Scrutiny

• Exhibit 1, 2 and 3

• Plaintiffs' Proposed Order

Respectfully submitted,

Deborah A. Saunders

2504 Mellville Ave  Apt 2205

Decatur, GA30032

I certify that on May _18_, 2022, I mailed & filed Motion for Summary

Judgment with the Clerk of the Court using the CM/ECF system, which will

notify:

PBGC- Nicole Hagan                               Attorney Marvin L. Solomiany

1200 K  Street NW Suite 340                      101 Marietta   #3500

Washington DC 2005                     Atlanta, GA 30305

US Attorney General                              Attorney General Chris Carr

950 Pennsylvania Ave NW,                           40 Capital Square SW

Washington, DC 20530-0001              Atlanta, GA 30334

                 Submitted by:

                 Deborah Alex-Saunders

                 2504 Mellville Ave -

                 Apt. 2205

                 Decatur, GA 30032

1:21-cv-01594 VMC

United States Northern District Court District

of Atlanta, Georgia

Plaintiff's Memorandum Supporting The Motion for Summary Judgment

# Table of Contents

Table of Authorities:. . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...16

Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Standard of Review & Scrutiny: . . . . . . . . . . . . . . . . . . . . .17

Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...20

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...,24

## Overarching Conclusion

The COURT WILL LIKELY FIND the plaintiff is entitled to pension benefits from the ERISA plans and no waiver per the divorce decree to deny these rights exist.

**Accordingly, under § 502(a), participants and beneficiaries may recover payments that they are owed under a plan or would be owed absent the defendant's discriminatory intent in the interference of rights. In addition, under § 502(a)(3), participants and beneficiaries may generally obtain equitable remedies such as restitution, imposition of constructive trusts, disgorgement, injunctions, or specific performance**

The Supreme Court has held in Egelhoff *v. Egelhoff* that ERISA pre-empts State revocation by divorce decree. B ERISA recognizes the entitlement of benefits and PBGC authorizes the QDRO upon order from the federal court.

Table of Authorities

1. Egelhoffv. Egelhoff, 532 U.S. 141, 147 (2001).

2. Boggs v. Boggs, 520 U.S. 833, 853 (1997).

3. See Boggs, 520 U.S. at 853 (quoting Free v. Bland, 369 U.S. 663, 669 (1962), a unanimous Supreme Court decision that preempted a state law and thereby upheld a savings bond designation).

4. ERISA §§ 205(a), 206(d)(3)(A); 29 U.S.C. § 1055(a), 1056(d)(3)(A) (2000).

5. Both are contained within Part 2 of Subtitle B of Title I of ERISA, which is limited to pension plans. ERISA § 201; 29 U.S.C. § 1051 (2000).

6. ERISA § 205(a); 29 U.S.C. § 1055(a) (2000).

7. ERISA § 206(d)(3)(A); 29 U.S.C. § 1056(d)(3)(A) (2000).

8. QDROs, as discussed infra, are benefit designations. Thus, they do not require participants to make or retain any beneficiary designations. 454 U.S. 46 (1981).

9. Plans See, e.g., Guardian Life v. Finch, 395 F.3d 23 (5th Cir. 2004) (defending many of the stated holdings). See generally, Jeffrey Gorris,

8

Comment, Waivers of ERISA Plan Benefits: Preventing Judicial Interpretations of a Complex Statute from Frustrating the Statute's Simple Purpose, 155 U. PA. L. REV. 717 (Jan. 2007); accord Keron A. Wright, "Stuck on You": The Inability of an ExSpouse to Waive Rights Under an ERISA Pension Plan [McGowan v. NJR Serv. Corp., 423 F.3d 241 (3d Cir. 2005)], 45 WASHBuRN L.J. 687 (Spring 2006). Cf David S. Lebolt, "Making the Best of Egelhoff. Federal Common Law for ERISA-Preempted Beneficiary Designations," 28 J. PEN. PLAN. AND COMP. 29 (2002) (proposing a federal common law approach is proposed which appeals to prevailing national standards, such as the various Restatements of law, rather than the diverse and preempted state laws).

10. Know Your Rights Under ERISA to Prevent Pension Fraud

https://www.eisneramper.com › eris-pension-fraud-0820

Aug 6, 2020 — This **fraud** can involve the employer denying **pension** benefits (e.g., denying the **spouse** of an employee's **pension** benefits after the employee ..

11. ERISA § 502(a)(1)(B)1

12. ERISA § 503

13. 29 U.S.C. § 1132(a)(1)(B). 2. 29 U.S.C. § 1133.

14. . Denton v. First Nat'l Bank, 765 F.2d 1295, 1300 (5th Cir. 1985).

15.   29 U.S.C. § 1132(a)(2).

16.. 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1002(21)(A).

17.   See 29 U.S.C. § 1132(a)(2).

18. Harris Trust & Sav. Bank v. Salomon Smith Barney Inc., 500 U.S. 238, 246 (2000). 8. 29 U.S.C. § 114

## Introduction

This claim is due to Pension fraud, an act that involves the use of misrepresentation or deceit in connection with a pension claim, specifically, denying the **spouse** of an employee's **pension** benefit.

The Supreme Court stated in 2001, in Egelhoff v. Egelhoff,1 that a core Employee Retirement Income Security Act (ERISA) concern is the "ERISA command," that ERISA fiduciaries make payments to the beneficiary who is "designated by the terms of [the] plan." Thus, the Supreme Court held that ERISA preempted a state law which attempted to revoke an ERISA plan participant's designation of his spouse upon his divorce."

 The Supreme Court held, in 1981 in Ridgway v. Ridgway," which was cited in Boggs," with respect to a beneficiary designation.  Secondly,  "waivers" by spouses of interests to ERISA plans, which are part of marital dissolution agreements, whether or not part of state court orders, do not give anyone other than the designee the right to obtain plan benefits either directly from the plan or indirectly from the plan designee. Such waivers are **voided** by both the ERISA beneficiary designation mandate and the ERISA prohibition on the alienation of ERISA pension benefits.

The Plaintiff by way of twenty years of marriage and thirteen years as a co-contributor of the GM/DELPHI Pension Plan is entitled to pension benefits. Per mandate of The Plan, the plaintiff as the original spouse automatically became the designated beneficiary as the Plan which only requires one year of marriage.

## FAILURE TO DISCLOSE

The Defendant, Malachiah Saunders committed pension fraud and deceit by denying **pension** benefits to the plaintiff. The defendant violated ERISA laws by willfully alienating the plaintiff from her portion of The Plan benefits inclusive of 401(k), medical, savings, and welfare by failure to disclose beneficiary status In 1990, The defendant concealed the marital status/divorce to the GM/DELPHI benefits office.

As a participant several disclosures were required for a qualifying event, such as dissolution of marriage See Exhibit 3

Upon retirement in 2007, the defendant further concealed the marital/divorce status to the Plan administrator so that PBGC would not look for the JOD documents.  Who advised the participant, Defendant

12

Saunders to conceal the documents in effort to prevent the spousal distribution of the pension funds is questionable. Is this a common practice among UAW appointed attorney?

Because the defendant really wanted to alienate the plaintiff he continued to conceal the marital status documents to PBGC. This action caused the PBGC's failure to discharge their fiduciary duties and violate ERISA as they had no documents on file from the defendant (participant) forms regarding the Plan designated beneficiary. Initially, PBGC refused to cooperate with the Plaintiff and denied the beneficiary benefits using privacy laws as an excuse.

However, now upon proof of marital status and notice of misrepresentation of compliant waiver; PGBC has now pre-approved the QDRO as submitted from the ex-spouse and is just waiting for the federal court order to activate the account.

The Dept of Labor has a ERISA enforcement division that investigates this kind of pension fraud as "Concealment of Facts in Relation to Documents Required by the Employee Retirement Income Security Act of 1974 (18

U.S.C. Section 1027)". Such an investigation lies in the authority of the Attorney Generals, as the involuntary plaintiffs.

## VOID WAIVER

There was a statement in the state divorce decree that the plaintiff was not to question or inquire into his (defendant's) "own" pension. If he believed that statement to be a legitimate waiver, "why  did he hide it from the pension administrator?" Who advised him?

According to ERISA law there are certain specifics and disclosure requirements that preempt state law  and void  this statement as a "waiver". Even the state of Ohio prohibits such waivers as valid in JOD.

 Plaintiff exhausted administrative procedures available under a plan before filing a federal lawsuit. Defendant
refused to even answer summons in state domestic court several times.

Under § 502(a)(2), participants, beneficiaries, and the Secretary of Labor may, on behalf of the plan, recover losses incurred because of fiduciary

breaches. In addition, individual (beneficiaries) in defined contribution plans may recover losses incurred in their own accounts.

Such as in this case,  the cost of actuaires, paralegals and legal software have grown considerably even "in the manner of a pauper," is costly and should be recovered in relief.  Whereas the defendant built new house, new cars and traveled overseas.

 It is noted that this claim in  § 502(a)(3) action authorizes an action where a non fiduciary, the defendant, Malachiah Saunders, was without the authority to administer the Plan to assign or alienate beneficiaries; *knowingly* participated in (1) any breach of fiduciaries' fiduciary duties under ERISA.  The non-fiduciary's conduct contributed to the loss that the plaintiff incurred in trying to get benefits since 2007,  because the non-fiduciary aided the fiduciary's misconduct.

1.  By concealing documents, the dependant deceived the fiduciary PBGC to breached a fiduciary duty under ERISA initially denying benefits to plaintiff.

2. The defendant had actual or constructive knowledge that the primary violator's activity was improper;

3. The defendant participated in the improper activity; and

4. a cognizable loss resulted.

## Plaintiffs' Statement of Material Facts Not in Genuine Dispute.Facts

These facts are summarized from Plaintiffs' Statement of Material Facts Not in Genuine Dispute ("SMF").

1. ERISA governs the division of any retirement interest Defined Pension Plan and all must comply with federal law irregardless of state domestic law.

2. 1977, The defendant signed an enforceable contract with GM/DELPHI/UAW Defined Pension Plan which mandated spousal retirement benefits and QDRO requirements.

3. Plaintiff was a economic partner and co contributor In GM/DELPHI/UAW Plan for thirteen years as beneficiary and alternate payee with accumulated pension rights under federal law.

16

4. The Plan governed by ERISA provides that benefits may not be assigned or alienated except in a case of Qualified Domestic Relations Order (QDRO).

5. In 1990, a divorce was filed by the defendant which did not include a QDRO. The defendant was not retired at that time and concerned only about his "own" portion of the pension. See EX1 para 8. "Not a proper waiver of spousal pension rights."

6. ERISA requires that each retirement plan pay benefits in accordance of QDRO that has been submitted and approved by plan administrator (PBGC)

Argument

The core of this case is that Plaintiff is entitled to receive spousal retirement benefits as contracted by Delphi/UAW and "pre" approved by Pension Benefits Guarantee Corporation, Acting Administrators. The defendant over time concealed and misrepresented that the waiver was in compliance to deny spousal benefits from the Pension Plan.

I. Standard of Review & Scrutiny

The court shall grant summary judgment if," as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)

Regarding scrutiny level, as shown next, (A) Defendant Saunders neither decides Plan designations nor controls the QDRO requirements in the pension plan which determine the rights of an employee designated beneficiary per Delphi/UAW contract.(B) PBGC controls the administration of the contribution-restriction context in the Delphi Pension Plan for hourly workers.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, motion for summary judgment "shall be rendered forthwith if the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." See, Fed R. Civ. P.

18

56(c); Barwick v. Celotex Corp., 736 F2d. 946 (4th Cir.); Celotex v. Catrett, 477 U.S. 317, 322-24(1986).

To prevail on a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issues as to all the material facts, which under the applicable principles of substantive law, entitle him/her to judgment as a matter of law. *Lewis v. Coleman, 257* F. Supp. 38 (S.D. W. Va. 1966).

Plaintiff has moved for summary judgment in her favor  Fed R. Civ. P.56.  In support of that motion, plaintiff provides the following statement of material facts not in genuine dispute.

Parties:

The plaintiff was in a binding marriage contract for twenty years with the defendant and thirteen of those years as spouse was a co-contributor to the pension plan as contracted with DELPHI/UAW.

Defendant was an hourly employee of DELPHI/UAW for thirty years and a contracted participant in The Pension Plan. Defendant willfully refused to disclose and conceal  marital dissolution  status from the GM benefits office.

PBGC is the appointed trustee of the pension funds and mandated to comply with ERISA federal law;as such is the enjoined party to intercede for the compliance of the law.

Federal and State Attorney Generals are mandated as the guardians to federal funds and state interest. The parties are the involuntary plaintiffs accordingly.

## Scrutiny

The Provisions of the ERISA Law:Prevailing Law. Qualifying (QDRO)

A qualified domestic relations order (QDRO) is a decree or court order that requires that a portion of a retirement plan be assigned or paid to another person, such as a spouse or dependant, in the case of a divorce. Typically, during a divorce, the couples' assets are divided, but since that split doesn't automatically extend to retirement plans, a QDRO is used..

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for Violations of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C)

1. Plaintiff re-alleges and incorporates herein by reference all prior allegations of the Complaint.

2. Enjoined Defendant is a party in interest under ERISA in that it provided services to each of the Plans. ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

3. Enjoined Defendant is also a covered service provider.

4. Enjoined Defendant received compensation in the form of Income and a specific expense charge in exchange for the services it provided to the Plans

5. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

6. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to Plaintiff and the Class, including but not limited to the disgorgement by Defendant of its undisclosed, excessive, and unreasonable compensation.

## SECOND CLAIM FOR RELIEF

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for Violations of ERISA §
406(b)(1), 29 U.S.C. § 1106(b)(1)

1. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), provides that a fiduciary
   shall not deal with plan assets in his own interest or for his own
   account.

2. First, as alleged above, Defendant failed to make disclosures
   concerning beneficiaries.

3. Whether Defendant breached its fiduciary duties in failing to comply
   with ERISA as set forth above; d. Whether Defendant's acts as
   alleged above breached ERISA's prohibited transaction rules;
   Whether monies received and retained by Defendant from the Plan
   directly relates to the alienation of the plaintiff as  beneficiary.

4. Whether an affirmative defense to a prohibited transaction claim
   applies and can be satisfied by Enjoined Defendant; and  Whether
   Defendant's acts proximately caused losses to the Plans and, if so,
   the appropriate relief to which Plaintiff, on behalf of the Plan is
   entitled

5. As a result of Defendant's failure to make such disclosures, the
   Income is, as a matter of law, unreasonable compensation within the
   meaning of ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2).

6. Plaintiff has been damaged in the amount of the Income Defendants
   took in connection 15 Years of denial of pension payments.

7. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant
   or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or

practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

8.  Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to Plaintiff including but not limited to the disgorgement by Defendant of its undisclosed, excessive, and unreasonable compensation.

9.  ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

10. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

11. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

12. Plaintiff is entitled to recover the Income and other appropriate relief as a result of these violations.

THIRD CLAIM FOR RELIEF

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for Violations of ERISA § 404, 29 U.S.C. § 1104

1. Plaintiff realleges and incorporates herein by reference all prior allegations of the Complaint.

2. Plaintiff  has been damaged in the amount of the Income Defendant took in connection with the fraud and alienation of benefits.

3. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and not support or aid any violating conduct:  for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

4. ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate. 98. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

5.   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

6.  Plaintiff is entitled to recover the Income and other appropriate relief as a result of these violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.  Order declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA, with respect to the Plans;

B.  Award, declare or otherwise provide Plaintiff all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper and such appropriate equitable relief as the Court may order, including damages, an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy;

C. Award to Plaintiff legal fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

D. Award prejudgment and post-judgment interest.

## Conclusion

Therefore, Plaintiff is entitled to summary judgment which

should be granted. Wherefore, this Plaintiff requests that

she be granted summary judgment as a matter of law,

together with such other and further relief as this Court

may deem just and proper.

Respectfully submitted,

Deborah Alex-Saunders

PROPOSED ORDER

The Court, having reviewed and considered the papers filed in support

of and in opposition to the application, and having received and

considered the arguments of counsel, finds that good cause exists

to GRANT the motion in its entirety.

IT IS SO ORDERED.

DATED:

_____

JUDGE OF THE DISTRICT COURT

EXHIBITS

1, 2, 3



Pension Benefit Guaranty Corporation
P.O.Box 151750
Alexandria VA 22315-1750

**Account Information**
**Customer ID:** 8123774
**Case Number:** 20637100
**Plan Name:** DELPHI HRLY-RATE EES PENSION PLAN

Exhibit 1

601
August 27, 2021

22742760-8496751
DEBORAH A SAUNDERS
2504 MELVILLE AVE APT 2205
DECATUR GA 30032

Subject: Informal Review of Draft Domestic Relations Order
Relating to MALACHIAH SAUNDERS: Draft Would Be Qualified

Dear DEBORAH SAUNDERS:

PBGC has informally reviewed your draft domestic relations order ("draft").

Your draft, if submitted unchanged as an original signed domestic relations order (typically this means an order signed by a state court judge, but some states authorize other entities to sign such orders) or a certified or authenticated copy thereof, **WOULD BE** a qualified domestic relations order (a "QDRO") under Section 206(d)(3)(B) of ERISA, 29 U.S.C. §1056(d)(3)(B).

PBGC will **NOT** suspend any part of the benefit payments to the participant before receipt of original signed order (or certified or authenticated copy thereof). However, if the participant applies or has applied for PBGC benefits, PBGC will delay the commencement of any benefits to the participant for up to 60 days from the date of this letter.

If you wish, but are unable, to submit an original signed order (or certified or authenticated copy thereof) within 60 days from the date of this letter, please notify PBGC by letter within the next 60 days and send either –

- documentation that a court date has been set for consideration of the amended order or
- a written statement by one of the parties that court review will occur in 60 or more days

If PBGC receives no documentation, written statement, original signed order (or a certified or authenticated copy thereof) within 60 days and the participant has a pending benefit application, PBGC will start the participant's benefit payments.

**NOTE:** After a participant goes into pay status, the alternate payee will not be able to have a separate interest order or an order providing for a survivor benefit for the alternate payee approved as a QDRO by the PBGC.

If PBGC receives an original signed domestic relations order (or a certified or authenticated copy thereof) within 60 days, PBGC will continue to delay the participant's benefit payments.



If the participant already receives benefit payments, PBGC will start suspending benefits to the participant in the amount that the order allocates to the alternate payee. This benefit suspension or delay will continue until the qualified status of the order, including any appeal, is determined. In no case will PBGC suspend or delay benefits for more than 18 months from the date the alternate payee would first be entitled to a benefit under the order.

Please visit www.pbgc.gov/docs/QDRO.pdf to view *Qualified Domestic Relations Orders & PBGC*. We describe our procedures for determining whether an order is a QDRO as well as for administering distributions mandated under such orders.

If you have any questions, please call us at **1 (800) 400-7242**, Monday through Friday, 8:00 a.m. – 7:00 p.m. ET. If you use a TTY/ASCII, call **1 (800) 877-8339**, and ask the relay operator to call our telephone number. Or, you may write to us at the address on the letter. Please include your customer ID number: **8123774**, PBGC case number: **20637100**, and a daytime telephone number.

Please keep this letter in your records for future reference.

Sincerely,


**PBGC Customer Service Representative**
Office of Benefits Administration



Exhibit 2

Deborah A Alex-Saunders
2504 Melville Ave Apt 2205
Decatur, GA 30032
770-912-1108
Pro Se

# In The United States District Court Of Northern Georgia
## Atlanta Division

---

In the Matter of:
Deborah Ann Alex-Saunders                          Case: _____
      Plaintiff,

                                      Re: 89-DR-128

      Vs.

Malachiah Saunders,                                      JUDGE:_____
      Defendant,

---

## QUALIFIED DOMESTIC RELATIONS ORDER

### IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

This Order is intended to be a qualified domestic relations order (QDRO), as that term is defined in section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (ERISA) and section 414(p) of the Internal Revenue Code of 1986, as amended (Code). This Order is granted in accordance with applicable domestic relations laws of the State of Ohio, which relate to marital property rights, child support, and/or spousal support between spouses or between a spouse and a former spouse in matrimonial actions.

### SECTION 1.   IDENTIFICATION OF PLAN

This Order applies to benefits under the Delphi Hourly-Rate Employee Pension Plan (Plan). The Pension Benefit Guaranty Corporation (PBGC) is trustee of the Plan.

### SECTION 2.   IDENTIFICATION OF PARTICIPANT AND ALTERNATE PAYEE

**Participant Information:**

Malachiah Saunders is eligible to receive a benefit from the Plan and is hereafter referred to as the (Participant). The Participant's mailing address is 190 Reserve Ave, Oberlin, Ohio 44074. The Participant's Social Security Number is (See Confidential Information Form). The Participant's Birth Date is (See Confidential Information Form).

The Participant is receiving benefits from PBGC with respect to this Plan.

**Alternate Payee Information:**

Deborah Ann Alex-Saunders is hereafter referred to as the (Alternate Payee). The Alternate Payee's mailing address is 2504 Mellville Ave, Apt 2205, Decatur, GEOGRIA 30032. The Alternate Payee's Social Security Number is (See Confidential Information

Form). The Alternate Payee's Birth Date is (See Confidential Information Form).

The Alternate Payee is the Former Spouse of the Participant and shall have the duty to notify the PBGC in writing of any changes in her mailing address subsequent to the entry of this Order.

**SECTION 3.   AMOUNT OF BENEFIT TO BE PAID TO ALTERNATE PAYEE**

Starting at the time specified in section 5, PBGC shall pay to the Alternate Payee Twenty-Two Percent (22 %) of each of the Participant's monthly benefit payments.

**SECTION 4.   PBGC BENEFIT ADJUSTMENTS**

If PBGC adjusts the Participant's benefit from the benefit payable under the Plan, any reduction shall be applied by decreasing pro rata the Participant's and the Alternate Payee's benefits, and any increase shall be applied by increasing pro rata the Participant's and the Alternate Payee's benefits.

**SECTION 5.   BENEFITS START**

The Alternate Payee's commencement of benefits shall be such future date as the Alternate Payee elects. This date must be the first day of a month, but not earlier than the later of the date PBGC receives this domestic relations order and the Participant's annuity starting date. Payment shall not be made until PBGC qualifies this domestic relations order and receives a PBGC benefit application from the Alternate Payee.

**SECTION 6.   FORM OF BENEFIT**

The Alternate Payee shall not have the right to elect a form of benefit. The amount paid to the Alternate Payee will be determined by the benefit form elected by the Participant.

**SECTION 7.   BENEFITS STOP**

Except for any survivor benefits described in Section 10, PBGC shall make payments to the Alternate Payee until the earlier of the Participant's or Alternate Payee's death.

**SECTION 8.   DEATH OF PARTICIPANT**

Except for any survivor benefits described in Section 10, if the Participant dies before the Alternate Payee, the Alternate Payee is not entitled to any payments as of the first of the month following the Participant's death.

**SECTION 9.   DEATH OF ALTERNATE PAYEE**

If the Alternate Payee dies before commencing benefits, the shared payment shall revert to the Participant.

**SECTION 10.   SURVIVING SPOUSE RIGHTS OF ALTERNATE PAYEE**

PBGC shall NOT treat the Alternate Payee as the Participant's spouse for purposes of the Participant's qualified joint and survivor annuity (QJSA).

**SECTION 11.   EARLY RETIREMENT SUBSIDY**

PBGC shall pay the Alternate Payee a pro rata share of any early retirement subsidy that is paid to the Participant at retirement. The Alternate Payee shall be entitled to a pro rata share of any early retirement subsidy provided to the Participant on the date the Participant commences

benefits, but not before. If the Alternate Payee commences receiving benefits on an unsubsidized basis before the Participant retires with a subsidized benefit, then the amounts payable to the Alternate Payee shall be increased when the Participant retires with a subsidized benefit in accordance with PBGC's practices and actuarial principles in order to provide the Alternate Payee with a pro rata share of the subsidy. The pro rata share shall be calculated in the same manner as the Alternate Payee's share of the Participant's retirement benefits is calculated pursuant to the terms of this Order.

## SECTION 12.   OTHER REQUIREMENTS

Nothing in this Order shall require PBGC:

a.   To pay any benefits not permitted under ERISA or the Code;

b.   To provide any type or form of benefit or any option not otherwise provided under the Plan or paid by PBGC;

c.   To pay benefits to the Participant and Alternate Payee with a total value that exceeds the value of the benefits the Participant otherwise would receive under Title IV of ERISA;

d.   To pay benefits to the Alternate Payee that are required to be paid to another alternate payee under another QDRO that is in effect prior to this Order;

e.   To pay benefits to the Alternate Payee for any period before PBGC receives this Order;

f.    To pay benefits as a separate interest to the Alternate Payee if the Participant is already receiving benefit payments; or

g.   To change the benefit form or the beneficiary of a joint life annuity if the Participant is already receiving benefit payments.

## SECTION 13.   RESERVATION OF JURISDICTION

The Court reserves jurisdiction to amend this Order to establish or maintain its status as a QDRO under ERISA and the Code.

IT IS SO ORDERED, this            day of                         , 20        .


                              BY THE COURT:

# EXHIBIT  #3

## Examples of a few required Disclosures:

# EXHIBIT   3

## Overview of ERISA Title I Basic Disclosure Requirements1

**Notice of Domestic Relations Order**
**Domestic Relations Order (DRO) Notifications from plan administrator Participants, and alternate payees (i.e., Administrator, upon receipt of the DRO, and Qualified Domestic Relations regarding its receipt of a DRO, and upon spouse, former spouse, child, or other must promptly issue the notice Order (QDRO) Notices a determination as to whether the DRO is qualified.**

**For more information see ERISA § 206(d)(3) and the EBSA booklet QDROs: The Division of Retirement Benefits Through Qualified Domestic Relations Orders. dependent of a participant named in a DRO as having a right to receive all or a portion of the participant's plan benefits). (including the plan's procedures for determining its qualified status).**

**The second notice, regarding whether the DRO is qualified, must be issued within a reasonable period of time after receipt of the DRO**

## Notice of COBRA Medical Change -14 days after the qualifying change

## Retirement Plans Reporting and Disclosure Requirement  by DOL

## Domestic relations order and qualified domestic relations order notices

## To notify the participant and alternate payee of the receipt of a domestic relations order, and the plan's procedures for determining the qualified status of the domestic relations order, , the

determination of <u>within a reasonable time after receipt of the order</u> whether the order is a QDRO will also be notified domestic relations qualified status order • Within a reasonable period of time Domestic relations order and qualified domestic relations order notices IRC 401(a)(13(B); 414(p)(6)((A); ERISA Section 206(d)(3) Notice 97-11 (model notice) See Retirement Plan Participant Notices - Domestic Relations Orders That Affect

When Participants and • Upon receipt - Receipt of the alternate payees domestic relations order and the named in a plan procedures

1. <u>Home</u>
2. <u>Retirement Plans</u>
3. <u>Correcting Plan Errors</u>
4. Fixing Common Plan Mistakes - Failure to Obtain Spousal Consent

# Fixing Common Plan Mistakes - Failure to Obtain Spousal Consent

- IRAs
- Types of Retirement Plans
- Required Minimum Distributions
- Published Guidance
- Forms & Publications
- Correcting Plan Errors
- News

*Exhibit-3*

- **Topic Index**

# The Issue

Many retirement plans are required to distribute benefits to participants in the form of a Qualified Joint and Survivor Annuity (QJSA). A QJSA is an annuity that provides a life annuity to the participant and a survivor annuity for the spouse's life following the participant's death. The survivor annuity must be no greater than 100% and no less than 50% of the annuity paid during the participant's life.

A QJSA must be provided to all participants under a defined benefit plan, money purchase plan or target benefit plan.

A profit sharing or stock bonus plan is not required to provide a QJSA if it satisfies these requirements:

1. The death benefit of the plan is payable in full to the surviving spouse unless the spouse has consented to another beneficiary;
2. A life annuity option cannot be elected in the plan or the participant does not elect into the plan's life annuity options; and
3. The benefit is not the result of a direct transfer from another plan which was required to provide a QJSA.

If the QJSA rule applies to a participant, a QJSA is mandatory unless the participant elects a different form of payment available under the plan. An election by a married participant to take a different form of payment, even if it is only for a portion of the participant's benefit, is not effective unless the participant's spouse also consents to the election. If the lump sum value of the participant's benefit is $5,000 or less, a lump sum can be paid instead of a QJSA without obtaining the participant's election or the spouse's consent.

# The Problem

*Exhibit 3*

A common plan mistake submitted for correction under the Voluntary Correction Program (VCP) or discovered during an IRS audit is the distribution to a married participant of a benefit in a form other than the required QJSA (e.g., a single lump sum) without <u>securing proper consent from the spouse. T</u>his often happens when the sponsor's human resources accounting system incorrectly classifies a participant as not married. The failure to provide proper spousal consent is an operational qualification mistake that would cause the plan to lose its tax-qualified status.

# The Fix

Normally, the correction method under the <u>Employee Plans Compliance Resolution System</u>PDF for a failure to obtain spousal consent requires the Plan Sponsor to notify the affected participant and spouse (to whom the participant was married at the time of the distribution) so that the spouse can provide spousal consent to the distribution actually made. If spousal consent to the prior distribution cannot be obtained because the spouse refuses to consent, does not respond to the notice or because the spouse cannot be located, the spouse is entitled to a benefit under the plan equal to the portion of the QJSA that would have been payable to the spouse upon the death of the participant had a qualified joint and survivor annuity been provided to the participant under the plan at his or her retirement. Such spousal benefit must be provided if a claim is made by the spouse.

Alternatively, the plan may offer the spouse the choice between:

- receiving the spousal benefit mentioned above or
- a single sum payment equal to the actuarial present value of that spousal benefit calculated using the applicable interest rate and mortality table under IRC 417(e)(3)